437 So.2d 1116 (1983)
Derry Lynn BEARDEN, Individually, and as Natural Tutrix of her minor son Ricky Bearden and Polly Christian
v.
Joseph RUCKER, Cavalier Insurance Company and Gulf Insurance Company.
No. 82-C-2506.
Supreme Court of Louisiana.
September 2, 1983.
*1117 Roy Maughan, Elliott W. Atkinson, Maughan & Atkinson, Ltd., Baton Rouge, for applicants.
John Swanner, Seale, Smith & Phelps, Henry D. Salassi, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for respondents.
CALOGERO, Justice.
A married woman living separate and apart from her husband, and the son and mother with whom the woman shared an apartment, were injured in an automobile accident while guest passengers in a non-owned automobile. The question presented in this review is whether there was applicable, at the time of the accident, the uninsured motorist coverage provided in a "Family Combination Automobile Policy" issued in the name of the woman's husband, on a community owned vehicle which, to the knowledge of the insurance agent who issued the policy, was in the woman's exclusive custody for her use.
Derry Lynn Bearden, her son Ricky Bearden, and her mother Polly Christian, were injured in an automobile accident on September 25, 1976. The three were passengers in an automobile owned by Exxon Corporation and driven by its employee, David Peters. These plaintiffs were injured when one of the defendants in the lawsuit, one Joseph Rucker, failed to stop, notwithstanding that he was confronted by a stop sign and flashing red light. Rucker's vehicle struck the vehicle in which the plaintiffs were riding. Plaintiffs filed this suit to recover damages for the injuries *1118 they sustained in the accident. Named as defendants in the suit, besides Rucker, were Cavalier Insurance Company (Rucker's insurer), the host driver David Peters, Fireman's Fund Insurance Company (as Peters' personal insurer and also as Exxon's insurer[1]), and Gulf Insurance Company (the uninsured motorist carrier on the policy issued in the name of Lloyd Bearden, the husband of Derry Lynn Bearden).
After trial on the merits, the district court made the following findings. The court held that the accident was caused solely by the negligence of Rucker and that, consequently, both Rucker and his liability insurer, Cavalier, were liable to plaintiffs. Since the host driver Peters was found not to have been at fault, the trial court held that neither Peters' personal liability insurer nor Exxon's liability insurer were liable to plaintiffs. However, the trial court held that plaintiffs were covered under the uninsured motorist provisions of Peters' personal insurance policy, upon finding that under that policy and its definitions the Exxon vehicle was an "insured automobile".[2] Finally, the trial court held that plaintiffs were not covered under the uninsured motorist provisions of the Gulf policy issued to Lloyd Bearden, as plaintiffs were not "residents of [his] household" at the time of the accident.
Damages were calculated in favor of plaintiffs collectively at $71,763.35[3] against defendants Rucker, Cavalier and Fireman's (the latter insurance company as Peters' UM insurer), but only to the extent of the insurers' policy limits (Cavalier's $10,000.00 liability limit and Fireman's $20,000.00 uninsured limits). However, upon defendant Rucker's filing a motion for a new trial (apparently upon receipt of reasons but prior to entry of any judgment) in which he sought a reduction in damages because of his inability to pay the part of the damages not covered by insurance,[4] the trial court reduced the originally calculated damages of $71,763.35 and awarded judgments totaling $35,000.00[5] (only $30,000.00 of which was covered by the defendant insurers' policy limits). From this judgment, plaintiffs appealed.
On appeal plaintiffs argued that the trial court erred in not finding Peters negligent and in thus not rendering judgment against Fireman's as Peters' personal liability insurer. They also argued that the court erred in failing to find that the plaintiffs were covered by the uninsured motorist policy issued by Gulf to Lloyd Bearden. And finally, they argued that the trial court erred in reducing the judgment because of defendant Rucker's insolvency. Rucker answered the appeal requesting a further reduction in the award because of his impecunious circumstances. The Court of Appeal, 418 So.2d 713, found no merit in any of the parties' contentions and affirmed the trial court judgment.[6]
As earlier indicated, we granted plaintiffs' writ application primarily to consider whether Lloyd Bearden's wife, Derry Lynn, Derry Lynn's mother, Polly Christian, and the couple's son, Ricky Bearden, were covered by the uninsured motorist provisions of *1119 the Gulf policy issued in the name of Lloyd Bearden.[7]
Lloyd Bearden and Derry Lynn Bearden were married sometime prior to 1962. They lived together as man and wife for a number of years before 1976 and had three children. The oldest child was 14 years of age at the time of the accident (September, 1976) and the youngest was 9 years of age at that time. Prior to 1976 they were living together in a home which they purchased on West Darryl Parkway in Baton Rouge, Louisiana. They owned two automobiles at that time, one of which was a 1969 Chevrolet Impala. Both vehicles were listed on a "Family Combination Automobile Policy" with Gulf, issued in the name of Lloyd Benton Bearden. In January of 1976, because of marital difficulties, Ms. Bearden moved out of the marital domicile and into an apartment on Sharp Road in Baton Rouge. Her youngest son, Ricky, moved with her, and her mother also moved into the apartment with the two of them. Ms. Bearden took the 1969 Impala with her when she moved, and was thereafter the sole custodian and user of the car. On or about April 27, 1976, the Gulf policy came up for renewal. It was renewed then, with the 1969 Impala listed on the policy. This was done with the knowledge on the part of Gulf's agent that the car was in Ms. Bearden's possession and that she was not then living with her husband, Mr. Bearden.
Six weeks later on June 9, 1976, upon Mr. Bearden's petition, a judgment of separation from bed and board was obtained. Custody of the youngest child, Ricky, was granted to Ms. Bearden and custody of the two older children was granted to Mr. Bearden. No community property settlement was made. The parties continued to owe debts and own property jointly. The couple continued to live separately.
Thereafter, on September 25, 1976, the accident which gave rise to this lawsuit occurred.
Whether these plaintiffs may recover from Gulf is governed by Ms. Bearden's status under the policy, that is, whether she qualifies as a "named insured" within the meaning of the policy definition.
In order to decide this fundamental question, it is necessary for us to examine certain terms in the policy. We do so "in accordance with the settled principle that ambiguity in an instrument is resolved against the draftsman." Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La. 1981), On Rehearing.
The policy issued to Lloyd Bearden contains the following provision:
PART IVFAMILY PROTECTION COVERAGE
Coverage JFamily Protection (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration. (Emphasis provided.)
The term "insured" is defined in this Part of the policy as follows:
"insured" means:
(a) the named insured and any relative;

*1120 (b) any other person while occupying an insured automobile; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above. (Emphasis provided.)
A "named insured" is defined as "the individual named in Item 1 of the declarations [in this case Lloyd Bearden] and also includes his spouse, if a resident of the same household."
"Relative" is defined in the policy as "a relative of the named insured who is a resident of the same household."
Thus, if it is determined that Ms. Bearden was, at the time of the accident, "a resident of the same household" as her husband, as that phrase is used in the policy, she is a "named insured" under the policy and covered by the uninsured motorist provisions therein.
The phrase "resident of the same household," as used in insurance policies, has been variously described by the courts of this state as having "no absolute or precise meaning," Bond v. Commercial Union Assur. Co., supra, and as having "no specific meaning as to place or time when a party would qualify for insurance coverage ... [and], therefore, uncertain and equivocal in phraseology." Hobbs v. Fireman's Fund Am. Ins. Companies, 339 So.2d 28 (La.App. 3rd Cir.1977), writs refused 341 So.2d 896 (La.1977). The courts of other jurisdictions have found the phrase to be "an ambiguous, elastic, or relative" one. Mathis v. Employers' Fire Ins. Co., 399 So.2d 273 (Ala.1981).
In Mathis v. Employers' Fire Ins. Co., supra, the court observed:
The word "resident" is in common usage, and many definitions of it are to be found in the decisions. It is, nevertheless, difficult to give an exact, or even a satisfactory, definition, for the term is flexible, elastic, slippery and somewhat ambiguous.
"Resident" has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.
This Court has not heretofore considered the meaning, in a "Family Combination Automobile Policy", of the phrase "resident of the same household" as it pertains to a spouse, although the matter has been considered in our lower courts and in other jurisdictions.
In Hobbs v. Fireman's Fund Am. Ins. Companies, supra, the Third Circuit Court of Appeal made the following determinations in holding that the wife was a resident of her husband's household and thus covered under the policy, notwithstanding that she had left the marital domicile in Mississippi and established a domicile in Louisiana:
Although a person may have only one domicile, that person may have several residences. Manuel v. American Employers Insurance Co., 228 So.2d 321 (La.App. 3 Cir.1969); LaFleur v. Seaboard Fire & Marine Insurance Co., 296 So.2d 860 (La. App. 3 Cir.1974). To maintain a residence a person needs only a place or premises which entitles him to return at his convenience without having to request permission of someone else. Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921); Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3 Cir. 1976).
The court further noted that "coverage should not be based upon the serenity, or lack thereof, in a marriage."
In Southern Farm Bureau Casualty Insurance Co. v. Kimball, 552 S.W.2d 207 (Tex.Civ.App.1977), the Court, after a thorough review of cases from several jurisdictions, concluded:

*1121 The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question is not solely whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with an intent not to return. In American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971), the court said that the residence in question "emphasizes membership in a group rather than an attachment to a building"; and that it is "a matter of intention and choice" rather than one of location. Under proper facts, it has been held that separations from the common roof by college students, by members of the military services, and by spouses (albeit with divorce actions pending) did not, per se, destroy their household membership with their families and spouses. See Crossett v. St. Louis Fire and Marine Ins. Co., 289 Ala. 598, 269 So.2d 869 (1972); Manuel v. American Employers Insurance Company, 228 So. 321 (La.App.1939); Giese v. Karstedt, 30 Wis.2d 630, 141 N.W.2d 886 (1966); Allstate Ins. Co. v. Jahrling, 12 N.Y.2d 943, 238 N.Y.S.2d 517, 188 N.E.2d 791 (1963); Doern v. Crawford, 36 Wis.2d 470, 153 N.W.2d 581 (1967); American Casualty Co. v. Harleysville Insurance, 238 Md. 322, 208 A.2d 597 (1965); Lumbermen's Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104 (Alaska Sup., 1963). Related annotations are found in 173 A.L.R. 901, 1 A.L.R.2d 557, 78 A.L.R.2d 1395, and 46 A.L.R.3d 1024.
Similarly, in Hawaiian Insurance & Guaranty Co. v. Federated American Insurance Co., 13 Wash.App. 7, 534 P.2d 48 (1975) the court observed:
From the cases which have dealt specifically with coverage during the period that one spouse has separated from the other, the basic inquiry is whether the separation was intended to be permanent without the prospect of reunion or temporary with reconciliation a possibility.
We are of a similar view, that the question of whether a spouse is a "resident of the same household" as the spouse named in the policy, in the context of whether the former remains covered under the family automobile policy issued to the named spouse, is not solely dependent upon whether the couple is living under the same roof. Rather, the emphasis is upon whether there remains "`membership in a group rather than an attachment to a building;' and it is `a matter of intention and choice' rather than one of location." Southern Farm Bureau Casualty Insurance Co. v. Kimball, supra.
The Beardens had been physically separated for approximately nine months at the time of the accident. A legal separation had been secured by Mr. Bearden. Ms. Bearden testified at trial that she still considered reconciliation a possibility. There was no division of the community property at any time prior to the accident. Thus, there remained joint ownership of all the community assets, including the family home and the automobile insured under the Gulf policy and used by Ms. Bearden and in her possession. The Gulf policy was renewed after the parties separated but before the judgment of legal separation. At the time of renewal, the agent was fully informed of the fact that Ms. Bearden had possession of the 1969 Impala and that Ms. Bearden was not then living in the family home with Mr. Bearden. The policy was renewed, with the inclusion of the Impala, and premiums were paid for that coverage. Ms. Bearden retained keys to the family home where she visited several times a week, and occasionally had meals with her children. She testified that she was free to come to and go from the family home as she pleased. She also still had at least some of her belongings at the family home, although it is from the record not clear just how much. Furthermore, at the time of the trial, in April of 1980, some four years *1122 after the separation, the parties were still not divorced.[8]
On the other hand, there was some evidence of an intent that the separation be permanent. The Beardens were legally separated at the time of the accident. Ms. Bearden had changed her address with the post office. She had moved a great deal of her belongings to her apartment. Although Ms. Bearden testified that she thought reconciliation was a possibility, Mr. Bearden testified that he thought it was not.
These facts must be considered in light of our matrimonial regimes laws and the public policy underlying them which favors preserving the marriage. The bonds of matrimony are not dissolved by a judgment of separation. La.C.C. art. 136. Only the community of acquets and gains is terminated. The parties still owe each other fidelity and the duty of support and assistance. Boucvalt v. Boucvalt, 235 La. 421, 104 So.2d 157 (1958). Reconciliation subsequent to a judgment of separation from bed and board vitiates all effects of the judgment except termination of the community. La.C.C. art. 152, 155. Efferson v. Efferson, 394 So.2d 1294 (La.App.Cir.1981), writs refused, 397 So.2d 1358 (La.1981).
Upon considering the factual circumstances of the instant case in light of the legal principles applicable, we conclude that Ms. Bearden was "a resident of the household" of her husband within the meaning of that phrase as used in Gulf Insurance Company's Family Combination Automobile Policy.
Therefore, according to the definitions provided in the Gulf policy, Ms. Bearden qualifies as a "named insured," for she is the spouse of "the individual named in Item 1 of the declarations" and "a resident of the same household." She is covered under the uninsured motorist provisions of the policy.
Ricky Bearden and Polly Christian are also covered by the uninsured motorist provisions of the Gulf policy. By the policy provisions, uninsured motorist coverage is provided for relatives of the named insured who are residents of the named insured's household. Since Ms. Bearden meets the definition provided in the policy for a named insured, her son Ricky and her mother Polly Christian, both of whom resided with Ms. Bearden, are, therefore, covered under the policy.
Therefore, we conclude that the lower courts erred in finding that the three plaintiffs were not covered under the uninsured motorist provisions of the Gulf policy. The Gulf policy limits should have been considered in determining the appropriate damage award. Plaintiffs' argument that the trial court erred in reducing his original calculation of damages to $35,000.00 because of Rucker's impecunious circumstances has merit in view of our inclusion of Gulf as a liable and solvent defendant.
Plaintiffs also argue that the outset determination by the trial judge that plaintiffs' damages collectively warranted only $71,763.35 (prior to the reduction based on Rucker's inability to pay) was wrong, the overall damages being inadequate. We make no finding in that regard inasmuch as the only judgment rendered in the district court was for a total sum of $35,000.00, which in this opinion we have upset.[9]
While it should be a simple matter to add Gulf's policy limits to those available to cover plaintiffs' damages, and then to make the appropriate awards, that task has been made extremely difficult if not impossible *1123 at this juncture because of several factors.[10] We therefore prefer to remand the case to the district court for the rendition of the appropriate judgment with due consideration of the respective policies, their coverages, limits, and other legally appropriate provisions, and in accordance with the determinations made herein.

Decree
For the foregoing reasons and consistent therewith, the judgments of the lower courts are reversed in part, affirmed in part and the case is remanded to the trial court to fix and apportion such damages, and against such parties, as are legally appropriate.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
LEMMON, J., dissents.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
Contracts of insurance, like all other contracts, are to be given a genuine construction; their terms, when they are clear and unambiguous, ought to be construed so as to reflect the accepted usage of the component words. La.C.C. art. 1945, 1946. As this Court stated in Commercial Union Insurance Co. v. Advance Coating, 351 So.2d 1183, 1185 (La.1977):
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists ...
In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligation not inconsistent with public policy.
The instant case involves a clause in an insurance contract which, on its face, appears unambiguous. Simply stated, the clause limits coverage to the named insured (plaintiff's husband) and "any relative". Any relative is subsequently defined in the contract as "a relative of the named insured who is a resident of the same household."[1] Resident, in its most generally accepted meaning, suggests a factual place of abodea place where a party actually dwells. Black's Law Dictionary, Webster's Third New International Dictionary. This interpretation of the word "residence" is further reinforced by the inclusion of the additional language "of the same household." Clearly, the parties to the contract of insurance intended that coverage extend only to the insured and the family members who lived with him. At the time of the accident, plaintiff did not live with her husband. To the contrary, she had been separated from her husband for nine months, *1124 and had not lived in her husband's home during that time. Under no reasonable construction of the term could plaintiff be considered a resident under the policy.
The majority suggests that, before attempting to define the scope of the term resident, reference must be made to principles of Louisiana law which accord a preference in favor of the existence of the family. Invocation of this somewhat amorphous preference seems particularly inappropriate given the facts of this case. The majority would hold that public policy that encourages the existence of family relationships should entitle a spouse judicially separated from her husband for nine months, to recover under her husband's insurance policy, when the plain language of the policy would otherwise not entitle her to do so. In my opinion, the policy considerations employed by the majority are inapplicable to a determination of residence and ought not to be used to disturb the intent of the parties to a private contract of insurance.
Therefore, I respectfully dissent.
NOTES
[1] Exxon was originally named as a defendant in the lawsuit but was dismissed from the suit upon a Motion for Summary Judgment.
[2] Exxon's insurer was not exposed for UM because uninsured motorist coverage was expressly rejected by Exxon in August of 1974 upon issuance of that policy.
[3] Damages were calculated in favor of the individual plaintiffs as follows:

Derry Lynn Bearden $55,759.70
Ricky Bearden $ 2,785.90
Polly Christian $13,217.75

[4] Williams v. McManus, 38 La.Ann. 161 (1886); Loyacano v. Jurgens, 50 La.Ann. 441, 23 So. 717 (1898); Suhor v. Gusse, 388 So.2d 755 (La.1980).
[5] Damages were awarded individually as follows:

Derry Lynn Bearden $27,195.00
Ricky Bearden $ 1,358.00
Polly Christian $ 6,447.00

[6] The Court of Appeal did amend the judgment by deducting $380.00 from the part of the judgment against Cavalier, because that sum represented an amount Cavalier had previously paid to another passenger in the Peters automobile.
[7] The trial court found that David Peters was not negligent. The Court of Appeals reviewed that finding and held that the evidence in the record supported the trial court determination. Finding no manifest error in the trial court judgment in this regard, the Court of Appeal affirmed the lower court findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). We likewise find no error in the trial court's findings concerning Peters' negligence and affirm that part of the judgment.
[8] Other jurisdictions have found relevant the parties' later actions in determining whether the separation was intended to be temporary or permanent. In Zurich Ins. Co. v. Monarch Ins. Co. of Ohio, 247 Md. 3, 230 A.2d 330 (1967), the court found the parties subsequent reconciliation relevant in establishing the wife's intention that the separation was temporary. And in Neidhoefer v. Automobile Ins. Co., 182 F.2d 269 (7th Cir.1950), the court found the parties' subsequent divorce relevant in establishing the wife's intention that the separation was permanent.
[9] Nor has the Court of Appeal reviewed a $71,000.00 sum of awards for its adequacy.
[10] Among the problems involved in a determination of quantum at this stage, and based on this record, are the following. 1) Because Gulf, is herein, for the first time being held liable to plaintiffs, the matter of the amount of Gulf's policy exposure has not heretofore been briefed or argued. 2) The judgment rendered, assessing plaintiffs' damages (collectively) at $35,000.00 has been reversed. The lower court's belief that it was bound to that award because of considerations of Rucker's inability to pay is now rendered incorrect in view of Gulf's liability. 3) It appears that the apportionment of the damage award against Cavalier and Fireman's (final judgments?) was erroneous since it required both to pay a sum to Derry Lynn Bearden in excess of their single claimant policy limits. Cavalier's 5/10 liability limits probably expose them to no more than $5,000.00 to any one claimant. Yet Ms. Bearden was awarded $7,770.00 against Cavalier. Similarly, against Fireman's and notwithstanding Fireman's 10/20 UM limits, Ms. Bearden was awarded $15,540.00. 4) A reduction of Cavalier's liability by $380.00 must be incorporated in the distribution of its policy limits among the three plaintiffs since that sum, as found by the Court of Appeal and affirmed here, has already been paid by Cavalier to another passenger in the automobile. 5) And finally, in the present record, there is an endorsement attached to the Gulf policy which seems to provide that Gulf will pay its UM policy limits irrespective of coverage or recovery under other policies. The meaning and applicability of this clause has not yet been considered and there does not appear in the present record what the effective dates of that endorsement were.
[1] Emphasis added.