701 So.2d 462 (1997)
Robert J. CARBON, Individually and on Behalf of his minor daughter, Jennifer Carbon
v.
ALLSTATE INSURANCE COMPANY.
No. 96 CA 2109.
Court of Appeal of Louisiana, First Circuit.
September 23, 1997.
Rehearing Denied November 12, 1997.
*465 Daniel A. Cavell, Camille A. Morvant, II, Thibodaux, for plaintiffs/appellees Robert J. Carbon and Jennifer Carbon.
James F. Ryan, Christopher E. Lawler, Metairie, for defendant/appellant Allstate Insurance Company.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
Defendant, Allstate Insurance Company ("Allstate"), appeals from a trial court judgment in favor of plaintiffs, Robert Carbon and Jennifer Carbon, awarding substantial damages as a result of injuries sustained by Jennifer in an automobile accident and penalties and attorney's fees based on Allstate arbitrary and capricious conduct in handling the claim. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Robert Carbon, individually and on behalf of his minor daughter Jennifer, filed suit for damages against Allstate, seeking damages for personal injuries sustained by Jennifer in a single vehicle accident in which she was a guest passenger. The vehicle, a 1985 Plymouth Voyager van, was being operated by Kory Hudgins. The accident occurred in the early morning hours of March 20, 1992, on Interstate Highway 35 in New Braunfels, Texas. Hudgins apparently fell asleep at the wheel and drove off the roadway. The van collided with a cement pillar of an overpass, and Jennifer was ejected from the vehicle through the windshield. Following the accident, testing revealed that Hudgins' blood alcohol level was 211.5 milligrams per decaliter, or in excess of 0.2 percent. As a result of the accident, Jennifer sustained a severe closed head injury.
Jennifer's parents, Robert Carbon and Linda Franz, were divorced approximately three and a half years before the accident, in August of 1988. Pursuant to a consent judgment rendered at that time in the Seventeenth Judicial District Court, Parish of Lafourche, Carbon and Franz were awarded joint care, custody and control of Jennifer. At the time of the accident, Jennifer was living with her mother in Texas.
Allstate had issued to Robert Carbon an automobile liability policy, which provided uninsured/underinsured motorist (UM) coverage, and a one million dollar umbrella policy. Both policies were in effect at the time of the accident. The policies in question provided coverage for relatives of the named insured (Robert Carbon) who resided in the named insured's household.
Allstate denied coverage on the basis that Jennifer was not a resident of her father's household. Prior to trial, pursuant to a motion in limine filed by plaintiffs, the trial court ruled that the language of the policy defining "resident" to include unmarried dependent children while temporarily away from home "if they intend to continue to live in your [the named insured's] household" was ambiguous and against public policy and that as a matter of law, Jennifer's residence was that of both her mother and her father.
Following trial on the merits, the jury found that Hudgins was 80% at fault in causing the accident and that Jennifer was 20% comparatively negligent, presumably based on a finding that Jennifer knew or should have known of Hudgins' intoxication, but nevertheless rode with him. The jury awarded the following amounts in damages:

Past and future physical pain
 and suffering $135,000.00
Past and future mental pain
 and suffering 235,000.00
Permanent disability and future
 medical expenses 750,000.00
Loss of enjoyment of life 75,000.00
Loss of earnings and earning
 capacity 200,000.00
Past medical expenses 282,927.00

*466 The jury further found that Allstate had failed to make a reasonable and timely offer to plaintiff after receiving satisfactory proof of loss and awarded $150,000.00 to Robert Carbon as reasonable attorney's fees.
The trial court rendered judgment, in accordance with the jury's verdict, in favor of Robert Carbon in the amount of $282,927.00 for past medical expenses, and in favor of Jennifer Carbon in the amount of $1,395,000.00, with these awards being subject to a twenty percent reduction for Jennifer's fault. Allstate's liability for these sums was limited to the applicable limits of insurance coverage, that being $105,000.00 under the automobile liability policy and $1,000,000.00 under the umbrella policy. The court further awarded plaintiffs $134,234.16, representing a penalty of 10% of the jury's award on plaintiffs' claim for arbitrary and capricious failure to pay, and $150,000.00 for reasonable attorney's fees.
From this judgment, Allstate appeals, averring that the trial court erred: (1) when it found Allstate's policy to be vague, ambiguous and against public policy; (2) in finding Jennifer only 20% at fault in this accident; and (3) in finding that Allstate was arbitrary and capricious in its handling of Carbon's claim.
Plaintiffs answered the appeal, listing the following assignments of error: (1) The trial court erred in allowing the introduction of evidence of Kory Hudgins' degree of intoxication; (2) the jury erred in assigning a percentage of fault to Jennifer Carbon because Allstate failed to provide sufficient proof for assessing a guest passenger any negligence; (3) the jury erred in failing to award a sufficient amount of damages to Jennifer Carbon for loss of enjoyment of life; (4) alternatively, and only in the event this court should find that the residence of Jennifer is a question of fact as opposed to a question of law, this court should remand the case to the trial court for a determination of that question; and (5) the penalty and attorney's fee award against Allstate should be increased on appeal.

INSURANCE COVERAGE

(Allstate's Assignment of Error No. 1; Plaintiffs' Assignment of Error No. 4)
Because the issue of insurance coverage could be dispositive of the entire case, we first address Allstate's contention that the trial court erred in its construction of the policy provision defining "resident." In this assignment of error, Allstate contends that the language of this provision of its policy is clear and unambiguous and that in considering the facts of this case, it is clear that Jennifer was not a resident of her father's household. Thus, Allstate argues that the trial court erred in ruling that, as a matter of law, Jennifer is a resident of both her mother's and her father's households.
The policies in question provide coverage for relatives of the named insured (Robert Carbon) who resided in the named insured's household. Specifically, Part V of the automobile policy, which addresses uninsured motorist (UM) insurance, and the personal umbrella policy provide that "insured persons" include "any resident relative." Additionally, the UM provisions of the automobile policy and the definitions section of the personal umbrella policy contain the following definition of "resident":
(3) "Resident"means the physical presence in your household with the intention to continue living there. Unmarried dependent children, while temporarily away from home will be considered residents if they intend to continue to live in your household.
Allstate denied coverage on the basis that Jennifer was not a resident of her father's household. Prior to trial, plaintiffs filed a motion in limine, seeking to exclude certain evidence which Allstate planned to introduce in an attempt to establish that Jennifer did not intend to be a resident of her father's household at the time of the accident. Following a hearing on the motion, the trial court concluded that the language of the policy defining "resident" to include unmarried dependent children while temporarily away from home "if they intend to continue to live in [the named insured's] household" *467 was ambiguous, pointing to the fact that Allstate's own adjuster and attorney gave differing opinions as to who "they" referred to in the above quoted provision (the adjuster thought "they" would refer to Dr. Carbon and the attorney contended it referred to unmarried dependent children) and because a minor is legally unable to designate his or her residence. The court further found that to implement the policy provision as written, that is, to allow a fifteen year old child to decide where she wanted to reside, would be against public policy.
Thus, the court concluded that the intent of the parties who control where the child is to reside would be determinative, not the intent of the child herself. The court noted that the parents, as natural tutors, had the right to designate where the child would reside. However, the court concluded that in a situation where there exists a judgment of joint custody, as in the instant case, the parties involved had abdicated their right to establish the child's residency to the court. The court, therefore, held that the residence of the child was fixed by law, in this case a judgment of joint custody; that in joint custody arrangements, the residence of the minor child is that of both the mother and the father as a matter of law; and that evidence of the intent of the parties was thus irrelevant. For these reasons, the court granted plaintiffs' motion in limine.
Turning first to the trial court's conclusions that the policy provision was ambiguous and against public policy, we do not agree that this policy language is ambiguous. When the terms of a contract are susceptible of more than one interpretation, it is ambiguous. Osborne v. Ladner, 96-0863, p. 11 (La. App. 1st Cir. 2/14/97); 691 So.2d 1245, 1254. If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988). Whether a contract is ambiguous or not is a question of law. Appellate review of questions of law is simply whether the trial court's interpretive decision is legally correct. Osborne, 96-0863 at p. 11; 691 So.2d at 1254.
In determining that the language of the policy defining "resident" was ambiguous, the trial court found that it was unclear to whom the pronoun "they" referred. However, in the sentence, "[u]nmarried dependent children, while temporarily away from home will be considered residents if they intend to continue to live in your household," we conclude the only group to whom "they" could refer is "unmarried dependent children." We find this provision is not subject to more than one reasonable interpretation. Thus, we conclude the policy is not ambiguous in this regard. See Pareti, 536 So.2d at 421.
However, we agree that application of this provision would be unlawful or against public policy in a situation, where, as here, coverage would be dependent upon the intent of a minor as to the minor's residence. Louisiana Civil Code article 218 provides that "[a]n unemancipated minor can not quit the parental house without the permission of his father and mother." Additionally, the Supreme Court in Toca v. Rojas, 152 La. 317, 325, 93 So. 108, 110 (1921)(quoting Prieto v. St. Alphonsus Convent of Mercy, 52 La. Ann. 631, 678-79, 27 So. 153, 169 (1900)), has held that during his minority, the unemancipated child is without capacity to leave the paternal domicile permanently and select for himself another domicile or residence. Thus, where the provision makes coverage dependent upon the intent of a minor as to whether he or she wants to reside with his or her parents, it is unlawful. Consequently, the trial court did not err in ruling that evidence of Jennifer's intent was irrelevant and inadmissible.
In the absence of a valid definition of "resident" in the policy as applied to this case, the question arises as to how the residence of the minor will be determined. Thus, we next consider Allstate's contention that the trial court erred in holding that because of the existence of a joint custody decree, Jennifer's residence is the residence of both her mother and her father, as a matter of law.
*468 Initially, we note that while an individual, including a minor, can have only one domicile, an individual may have several residences. Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 256-257, 178 So.2d 238, 242 (1965). Generally, "residence" with regard to insurance coverage is determined by intent. The determination of whether persons are residents of the same household at a particular time is not solely dependant upon whether they are then residing under one roof. Rather, the real test is whether the absence of the party of interest from the household of the named insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with an intent not to return. Bearden v. Rucker, 437 So.2d 1116, 1121 (La.1983); Miley v. Louisiana Farm Bureau Casualty Insurance Company, 599 So.2d 791, 797-798 (La.App. 1st Cir.), writ denied, 604 So.2d 1313 (La.1992). It is a matter of intention and choice, rather than one of location. Bearden, 437 So.2d at 1121. The courts have held that whether a person is or is not a resident of a household is a question of law as well as a question of fact that is to be determined from the facts of each case. Miley, 599 So.2d at 798. Additionally, the Supreme Court has held that because the term "resident of the same household" has no absolute or precise meaning, any doubt as to extent or fact of coverage under this term will be understood in its most inclusive sense. Bond v. Commercial Union Assurance Co., 407 So.2d 401, 407-408 (La.1981)(on rehearing).
However, with regard to the residency of a minor, the jurisprudence is not entirely consistent. In situations dealing with parental responsibility for the acts of a minor pursuant to LSA-C.C. art. 2318,[1] the case law clearly states that although the minor may be physically residing elsewhere, an unemancipated minor's residence is that of his father as a matter of law, unless changed in some manner prescribed by law. Toca, 152 La. at 324-327, 93 So. at 110-111; Watkins v. Cupit, 130 So.2d 720, 723 (La.App. 1st Cir.1961). This rule is based in part on LSA-C.C. art. 39, which provides that the domicile of an unemancipated minor is that of his father, mother or tutor, and is referred to as the legal residence of the minor. Taylor, 248 La. at 255-257, 178 So.2d at 241-242; Toca, 152 La. at 324, 93 So. at 110; Watkins, 130 So.2d at 723.
However, in cases dealing with an unemancipated minor's residence for purposes of insurance coverage, there has been no clear standard. Factors that have been considered include the legal residence of the minor, the actual residence of the minor, the intent of the minor and the intent of the parent.
In Taylor, the minor child was living and working with his uncle in Louisiana, but his parents lived in Arkansas. In determining whether the minor was an insured under his father's automobile liability policy, the Supreme Court held that the legal residence of the minor was that of his father. Taylor, 248 La. at 257, 178 So.2d at 242.
However, the Taylor court noted that the policy merely recited "resident" and not "legal resident." The court then observed that there had been no divestiture of relationship between the father and son; the son visited his parents; there had been no showing that the son was not free to go home at any time; and there was also no showing that the parents were unwilling or were not obligated to support their son. Taylor, 248 La. at 261, 178 So.2d at 243. The court concluded that while an unemancipated minor, the son had to be considered as temporarily absent from his parent's home and further concluded that under the facts presented, the son was a resident of his father's household. Thus, the son was found to be an insured under his father's policy. Taylor, 248 La. at 261, 178 So.2d at 243-244.
In Chapman v. Allstate Insurance Company, 306 So.2d 414 (La.App. 3rd Cir.1975), the Third Circuit Court of Appeal looked at both the legal residence and the actual residence of a minor to determine if the minor son was covered under his father's UM policy as a "resident of the same household." In Chapman, the parents were divorced, and the mother had been awarded custody of the son. *469 Thus, the court held that the minor son could not be considered a legal resident of his father's household, because there had been a change of status by law. Chapman, 306 So.2d at 415-416. However, the court did not end its analysis there, stating that it was not merely concerned with the son's legal residence. The court stated that there would be coverage under the policy if the son was actually residing in his father's household at the time of the accident. After considering the facts of the case (the son was living with his mother, had no belongings at his father's house, and had never been to his father's house), the court determined that the minor son also was not an actual resident of his father's household either. Thus, the court concluded that the minor son was not an insured under his father's policy. Chapman, 306 So.2d at 416. See also Ursin v. Oubre, 343 So.2d 1189 (La.App. 4th Cir.1977) (where the minor daughter lived with her mother, who had been awarded legal custody, the minor was not a resident of her father's household).
The Second Circuit Court of Appeal in Butler v. MFA Mutual Insurance Company, 356 So.2d 1129, 1131-1132 (La.App. 2nd Cir.), writ denied, 358 So.2d 641 (La.1978), found a minor child to be a "resident of the same household" of her insured father even though the mother had been awarded custody of the minor daughter. In that case, although the mother was awarded custody, she and her children were living in a home owned and maintained by the father. Additionally, the father stayed overnight with the children on occasions when the mother was out of town. Thus, the court did not give emphasis to the legal residence of the child, but looked at all of the facts and circumstances of the case to determine that the father and minor daughter were residents of the same household. Butler, 356 So.2d at 1131-1132.
The Fourth Circuit Court of Appeal in Flannigan v. Valliant, 371 So.2d 349, 351 (La.App. 4th Cir.1979), determined that a minor child was not a resident of his father's household in law or in fact and, thus, was not an insured under his father's homeowner's policy. In that case, the parents were divorced, and the mother had legal custody of the minor. However, he did not actually reside with either his mother or his father. In determining that the minor was not a resident of his father's household, the court relied heavily upon the minor's intention not to reside with his father. Flannigan, 371 So.2d at 350-351. See also Dofflemyer v. Gilley, 395 So.2d 403, 406 (La.App. 3rd Cir.1981) (where the unemancipated minor made a voluntary decision to leave his parents' home, and showed no intention of returning, the minor was not a member of his father's household). Recently, however, in Sambola v. Dwyer, 96-0259, p. 2 (La.App. 4th Cir. 8/21/96); 684 So.2d 957, 958, the Fourth Circuit, in considering an insurance coverage issue, held that intent is necessary for determining domicile, but not residence. However, this case did not involve a minor.
In Pizzo v. Graves, 453 So.2d 592, 596 (La.App. 5th Cir.), writ denied, 457 So.2d 1181 (La.1984), the Fifth Circuit, in concluding that a minor who did not physically reside with his mother, the custodial parent, was not a resident of the mother's household under her homeowner's policy, noted that the minor had been authorized by his mother to live under the care of another. Thus, it appears that the court deemed the intention of the custodial parent determinative.
Most recently, in Mobley v. State Farm Mutual Automobile Insurance Company, 28,357, pp. 8-9 (La.App. 2nd Cir. 5/8/96); 674 So.2d 1117, 1121, writ denied, 96-1402 (La.9/20/96); 679 So.2d 433, the Second Circuit interpreted the phrase "who lives with you" and listed some factors to be considered in determining whether a minor child lives with the named insured. These factors included: (1) where the child spends his time when not employed or at school; (2) where the child keeps his or her clothing or other personal belongings; (3) where the child receives his or her mail, including official notices and mail from friends; and (4) whether the child has a bedroom in the parent's home. Mobley, 28,357 at p. 9; 674 So.2d at 1121. The court noted that these factors are not exclusive, nor is any one factor more determinative than another. Importantly, the court further stated that consideration should be given to the fact that a child may *470 "live with" each separated or divorced parent under a joint custody plan. Mobley, 28,357 at p. 9; 674 So.2d at 1121.
In the instant case, in addition to establishing the legal residences of Jennifer as that of both parents, the judgment awarding joint custody also demonstrated that Jennifer was to actually reside with each parent, through the plan of implementation contained therein. Moreover, this judgment, which was rendered with the consent of the parties, expresses the intent of both the court and Jennifer's parents as to where Jennifer would reside. Therefore, we find no error in the trial court's conclusion that Jennifer was a resident of her father's household or in its decision to grant plaintiffs' motion in limine. Thus, we likewise find coverage was afforded under the policies at issue.
Because we find no error in the trial court's conclusion that Jennifer was a resident of Dr. Carbon's household, plaintiffs' assignment of error number four, in which plaintiffs sought a remand for further deliberation of the issue of residence, is rendered moot.

EVIDENCE OF DRIVER'S INTOXICATION

(Plaintiff's Assignment of Error No. 1)
In apportioning twenty percent fault to Jennifer, the jury obviously found her to be at fault for riding as a passenger in the vehicle that Hudgins was driving when Jennifer knew or should have known of Hudgins' intoxication. Plaintiffs contend that the trial court erred in allowing the introduction of evidence of Hudgins' intoxication, because Allstate failed to show that Hudgins' condition was a substantial cause of the accident or that Jennifer knew or should have known of Hudgins' impaired condition at the time of the accident.
Although plaintiffs argue that the evidence of Hudgins' blood alcohol level should not have been admissible into evidence, the question of whether Allstate proved all of the requisite elements to establish that Jennifer was at fault is truly a question of the weight of the evidence. Regarding the threshold admissibility of the blood alcohol results, the Louisiana Supreme Court has held that pursuant to LSA-R.S. 13:3714, certified medical records of any hospital, including the results of a blood alcohol test, will be admitted into evidence as prima facie proof of the contents thereof, without the necessity of establishing the chain of custody. Judd v. State, Department of Transportation and Development, 95-1052, pp. 6, 9-10 (La.11/27/95); 663 So.2d 690, 694, 696. The Court further held that the weight to be given the records will be affected by the expert testimony which may be offered to interpret the records, and will be affected by evidence introduced by either party regarding the character of the chain of custody, the quality of the testing procedures, or any other relevant factors that may be developed on cross-examination. Judd, 95-1052 at pp. 9-10; 663 So.2d at 696.
In the instant case, Allstate offered into evidence the medical records for Kory Hudgins from McKenna Memorial Hospital, which contained the results of the blood alcohol test performed after the accident in question. We note that the copy of these records which was admitted into evidence is not a certified copy, as required by LSA-R.S. 13:3714. However, plaintiffs made no objection at trial to the introduction of this evidence. Thus, any objection to Allstate's failure to produce a certified copy of the medical records is waived. LSA-C.E. art. 103(A)(1); Bienvenu v. Dudley, 95-0547, p. 8 (La.App. 1st Cir. 10/3/96); 682 So.2d 281, 286, writs denied, 96-2661, 96-2673 (La.12/13/96); 692 So.2d 1069, 1070; State v. Fontenot, 618 So.2d 915, 920 (La.App. 1st Cir.), writ denied, 623 So.2d 1332 (La.1993).

FAULT OF JENNIFER CARBON

(Plaintiff's Assignment of Error No. 2)
In their second assignment of error, plaintiffs contend that Allstate failed to show that Hudgins' intoxicated condition was a substantial cause of the accident or that Jennifer knew or should have known of Hudgins' impaired condition at the time of the accident. Thus, plaintiffs argue, the jury erred in assigning any percentage of fault to Jennifer.
*471 A guest passenger in an automobile has no duty to supervise the driver. However, if alcohol-induced impairment of the driver is a substantial cause of the driver's negligence and if the guest passenger knows or should have known of the driver's impaired condition and, nevertheless, voluntarily rides with him, the guest passenger may be found comparatively negligent or at fault. Rogers v. Daigle, 93-1523, p. 2 (La.App. 1st Cir. 6/3/94)(on rehearing); 643 So.2d 758, 763.
In the instant case, Officer Richard Bonitez, the officer who investigated the accident in question, testified that when he spoke to Kory Hudgins following the accident, Hudgins smelled of alcohol, his speech was slurred and his eyes were bloodshot. Officer Bonitez also testified that Hudgins related to him that he had fallen asleep at the wheel and driven off the roadway.[2]
Allstate also introduced into evidence the emergency room records from McKenna Memorial Hospital, which included the results of the blood alcohol test performed at the hospital. The test was performed shortly after Hudgins arrived at the emergency room, and indicated that Hudgins' blood alcohol level was 211.5 milligrams per decaliter. Dr. John Flanagan, the emergency room physician who treated Hudgins, testified that Hudgins' blood alcohol level was twice the legal intoxication limit and that the reason Hudgins' blood alcohol level was tested was that Hudgins appeared drowsy in the emergency room. Dr. Flanagan explained that sleepiness can be an initial sign of a head injury or can simply be caused by intoxicants. He stated that it is somewhat unusual for a patient to exhibit sleepiness in the emergency room after being involved in an accident. Thus, the blood alcohol test was performed in an effort to determine the cause of Hudgins' drowsiness.
Given the evidence that Hudgins' blood alcohol level was 211.5 milligrams per decaliter, over twice the legal limit; that intoxication can cause sleepiness; that he appeared sleepy in the emergency room; and that Hudgins told Officer Bonitez that he had fallen asleep at the wheel, we find no manifest error in the jury's conclusion that Hudgins' intoxication was a substantial factor and caused Hudgins' to run off the roadway and into a cement pillar. Additionally, given Officer Bonitez's testimony that shortly after the accident, Hudgins smelled of alcohol, that his speech was slurred and that his eyes were bloodshot, we likewise find no error in the jury's conclusion that Jennifer knew or should have known of Hudgins' impaired state. Thus, we find no merit to plaintiffs' contention that the jury erred in assigning any fault to Jennifer.

APPORTIONMENT OF FAULT

(Allstate's Assignment of Error No. 2)
Regarding the actual percentage of fault assigned to Jennifer, Allstate contends that Jennifer should have been found to be at least 50% at fault. Allstate asserts that because of evidentiary errors made by the trial court, it was precluded from presenting relevant evidence to the jury which would have established that Jennifer was at least 50% at fault, rather than only 20% at fault. Specifically, Allstate contends that it should have been allowed to elicit testimony from Officer Bonitez as to statements made by other individuals present at the scene of the accident and that it should have been allowed to present the deposition testimony of Dr. Thomas Martin regarding alleged prior behavioral problems of Jennifer.

Admissibility of Bystanders' Statements
Regarding the disallowed statements of bystanders at the scene of the accident, the record shows Allstate sought to question Officer Bonitez about these individuals' statements made concerning events which occurred prior to the accident, in San Antonio. Allstate contends that these statements were admissible under LSA-C.E. art. 803(1), as a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. Pursuant to LSA-C.E. art. *472 803(1), a "present sense impression" is confined to "describing or explaining" an event or condition perceived by the speaker. The critical factor is whether the statement was made while the individual was "perceiving" the event or "immediately thereafter." Buckbee v. United Gas Pipe Line Company, Inc., 561 So.2d 76, 84 (La.1990). The immediacy requirement of this exception should be strictly interpreted. LSA-C.E. art. 803(1), official comment. Thus, the statement may follow immediately after perceiving the event, allowing only for "the time needed for translating observation into speech." Buckbee, 561 So.2d at 84 (citing McCormick on Evidence, § 298).
In the instant case, the statements of the bystanders did not "immediately" follow their "perception" of an event. The statements by the bystanders dealt with events which occurred in San Antonio, prior to the accident in question, but were made to Officer Bonitez after the accident in question. Thus, these statements were sufficiently distant from the events which may have taken place in San Antonio to preclude admitting them as present sense impression exceptions to the hearsay rule pursuant to LSA-C.E. art. 803(1). Thus, these statements were properly excluded by the trial court. Buckbee, 561 So.2d at 84.

Admissibility of Evidence of Prior Behavioral Problems
Allstate also contends that the erroneously excluded deposition testimony of Dr. Thomas Martin regarding alleged prior behavioral problems of Jennifer would have established that Jennifer was at least 50% at fault, rather than only 20% at fault. The trial court ruled that this evidence was not relevant. Allstate contends that this testimony was relevant to show Jennifer's appreciation of the danger in which she placed herself by voluntarily riding with an intoxicated driver.
"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. While relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. arts. 402, 403. Evidence which is not relevant is not admissible. LSA-C.E. art. 402. A trial court's rulings on such evidentiary issues will not be disturbed unless a clear abuse of discretion is shown. Jones v. Peyton Place, Inc., 95-0574, pp. 11-12 (La.App. 4th Cir. 5/22/96); 675 So.2d 754, 763.
We find no abuse of discretion in the trial court's conclusion that evidence of Jennifer's prior behavioral problems was not relevant to the issues presented herein.[3] We do not believe that evidence of Jennifer's behavior at some point in the past would have aided the jury in its determination of Jennifer's appreciation on the night of the accident of the danger she may have faced by riding in a vehicle with Hudgins. Moreover, even assuming for the sake of argument that this evidence had some small degree of relevance, we find that any such relevance would have been substantially outweighed by the danger of unfair prejudice. See Jones, 95-0574 at p. 12; 675 So.2d at 763. As noted by the trial court, the effect of this evidence would have been "to expose the Plaintiff's adolescent problems to the public's view." We therefore find no abuse of discretion by the trial court in excluding Dr. Martin's deposition.
Thus, we find no merit in Allstate's argument that the jury should have been allowed to consider the bystanders' statements made to Officer Bonitez or Dr. Martin's deposition testimony and that upon considering *473 this evidence, it would have assigned at least 50% fault to Jennifer. Additionally, in reviewing the evidence presented herein in light of the factors set forth in Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1985), we cannot say that the jury was clearly wrong in its assessment of 20% fault to Jennifer. See Clement v. Frey, 95-1119, 95-1163, p. 7 (La.1/16/96); 666 So.2d 607, 610-611.

DAMAGES

(Plaintiff's Assignment of Error No. 3)
In this assignment of error, plaintiffs contend that the jury abused its discretion in awarding Jennifer only $75,000.00 for loss of enjoyment of life. Plaintiffs note that due to her severe head injury, Jennifer will never be able to complete high school. Additionally, Jennifer had experienced difficulty in successfully carrying out even very limited duties of a job she had obtained at a grocery store. Plaintiffs also note that the medical experts suggest that Jennifer should refrain from having children due to her mental infirmities. Plaintiffs argue that given her limitations, Jennifer will never be able to enjoy the benefit of a normal relationship with a member of the opposite sex. Thus, plaintiffs assert that the jury's award for this element of damages was abusively low.
The term "general damages" refers to those damages which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. In re Medical Review Panel, 94-1661, p. 13 (La.App.6/23/95); 657 So.2d 713, 722. Thus, loss of enjoyment of life is included in general damages. Foster v. Trafalgar House Oil & Gas, 603 So.2d 284, 285 (La.App. 2nd Cir.1992).
The trier of fact is accorded much discretion in fixing general damage awards. LSA-C.C. art. 2324.1; Cheramie v. Horst, 93-1168, p. 6 (La.App. 1st Cir. 5/20/94); 637 So.2d 720, 723. The discretion vested in the trier of fact is great, "even vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). In reviewing an award of general damages, a court of appeal is required to focus on the total award and not on each individual item. Richard v. Teague, 92-17, p. 23 (La.App. 3rd Cir. 5/4/94); 636 So.2d 1160, 1174, writ denied, 94-1934 (La.11/11/94); 644 So.2d 388. Viewing the record as a whole, as well as the total general damage award, we find no abuse of the jury's vast discretion. This assignment of error is likewise without merit.

ALLSTATE'S ARBITRARY AND CAPRICIOUS HANDLING OF THE CLAIM

(Allstate's Assignment of Error No. 4; Plaintiff's Assignment of Error No. 5)
Allstate contends that the jury erred in finding that it was arbitrary and capricious in its handling of Dr. Carbon's claims. Allstate argues that it acted reasonably in denying coverage based on "serious issues" of where Jennifer resided.
Pursuant to LSA-R.S. 22:658(A)(1), an insurer has a duty to pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured. Failure to make such payment, when the failure is found to be arbitrary, capricious or without probable cause, shall subject the insurer to a penalty of ten percent of the damages found to be due, together with reasonable attorney's fees for the prosecution and collection of such loss. LSA-R.S. 22:658(B)(1). Moreover, an insurer must bear the risk of misinterpreting its own policy provisions. If it makes an error in interpretation, that error will not be considered as a reasonable ground for delaying the payment of benefits, and will not relieve the insurer of the payment of penalties and attorney's fees pursuant to LSA-R.S. 22:658. Chrysler Credit Corporation v. Dairyland Insurance Company, 491 So.2d 402, 405 (La. App. 1st Cir.), writ denied, 494 So.2d 1178 (La.1986).
*474 The record herein demonstrates that Dr. Carbon initially filed a claim in this matter with his local insurance agency in Thibodaux. The claim was first handled by Allstate adjuster Elizabeth Daigle. At some point thereafter, Allstate claims adjuster Ted Friedman took over responsibility for handling the file.
On July 10, 1992, plaintiffs' counsel had a telephone conversation with Friedman regarding the claim. In response to that conversation, plaintiffs' counsel sent a letter to Friedman dated July 13, 1992, enclosing requested information related to the claim. This information included a copy of the accident report, a copy of the declarations page of Sara Hudgins' policy, excerpts of the deposition of a Dr. Brown and a copy of the admission sheet from Warm Springs Medical Center, a facility into which Jennifer was admitted. In the letter, plaintiffs' counsel requested that action be taken on this claim. However, after Friedman reviewed these documents and the letter, Allstate did not tender payment or respond as to whether it was going to pay the claim.
Plaintiffs' counsel then sent Friedman a letter dated October 13, 1992, again requesting that he give his immediate attention to this claim. Shortly after Friedman received this letter, he requested additional information from plaintiffs' counsel. The requested information was sent to Friedman on October 16, 1992. This information sent to Friedman included the judgment of divorce between Dr. Carbon and Linda Franz, indicating that they had joint custody of Jennifer, and Dr. Carbon's tax returns, reflecting that he claimed Jennifer as a dependant. Still, Allstate made no decision as to whether it would pay the claim or deny coverage.
Having received no response from Allstate, plaintiffs' counsel again wrote to Friedman on June 15, 1993, approximately eleven months after his initial letter to Allstate, once again requesting a response from Allstate in this matter. Thereafter, by letter dated November 3, 1993, over a year and a half after the accident and approximately a year and four months after plaintiffs' counsel's first written correspondence to Friedman, Allstate informed Dr. Carbon that it was denying coverage for Jennifer's accident, on the basis that Jennifer was not a resident of Dr. Carbon's household under Allstate's interpretation of the provisions of the policies.
Considering Allstate's failure to act timely in this manner and the finding by the trial court and this court that Jennifer is a "resident" of Dr. Carbon's household, as contemplated by the policies, we find no error in the award of penalties and attorney's fees to plaintiffs.
In their answer to the appeal, plaintiffs seek an increase in the penalty and attorney's fee award. With regard to the penalty, plaintiffs assert that if this court reverses the 20% fault allocated to Jennifer and increases the award for loss of enjoyment of life, an increase in the penalty award would be warranted. However, having found no error in the allocation of fault or abuse of discretion in the quantum awarded, we find no basis for an increase in the penalty award.
Plaintiffs are, however, entitled to an increase in the attorney's fee award for the work performed on appeal. An increase in attorney's fees is usually awarded when the defendant appeals and obtains no relief and when the appeal has necessitated additional work on the part of plaintiff's counsel, provided that plaintiff has requested the increase in accordance with proper appellate procedure. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). Plaintiffs properly requested an increase in a timely filed answer in this court. Their attorney filed an extensive brief in defense of the trial court's judgment, and presented oral argument before this court. Thus, considering these circumstances and the complexity of the issues presented herein, we find that an additional award of $2,500.00 is warranted herein in favor of plaintiffs.

CONCLUSION
For the above and foregoing reasons, the June 17, 1996 judgment of the trial court is affirmed, with the exception of the attorney's fee award which is amended to award plaintiffs an additional sum of $2,500.00 in attorney's fees for work performed on this appeal. *475 Interest on this additional award runs from date of this judgment, until paid. Costs of this appeal are assessed against Allstate Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.
FOIL, J., concurs in part and dissents in part.
FOIL, Judge, concurring in part and dissenting in part.
I would reverse the awarding of penalties and attorney fees.
NOTES
[1] Civil Code article 2318 provides, in pertinent part, that the father and the mother are responsible for damages caused by their minor or unemancipated children residing with them.
[2] At the time of the trial of this matter, Hudgins was deceased. His death was apparently unrelated to this accident.
[3] We note that on appeal, Allstate advances a new basis for its objection to the trial court's ruling excluding the deposition testimony of Dr. Martin. At trial, Allstate argued that this deposition testimony was relevant because it related to Jennifer's claim for future loss of income and that it would enable the jury to distinguish premorbid psychological conditions from any problems Jennifer has today in making its determinations on the issue of damages. Unlike the rule for admission of evidence, LSA-C.E. art. 103(A)(2) does not require a statement of the specific ground of the objection when evidence is excluded. Thus, the issue was preserved for review. State v. Edwards, 94-1985, pp. 4-5 (La.App. 4th Cir. 8/23/95); 660 So.2d 907, 909.