728 So.2d 1265 (1999)
Pauletta GEDWARD, Individually and as Tutrix of her minor child, Kodi Sonnier
v.
Ronnie SONNIER, Acceptance Insurance Company, Glenn Jolivette and Bobby Sonnier.
No. 98-C-1688.
Supreme Court of Louisiana.
March 2, 1999.
Rehearing Denied April 1, 1999.
*1266 Robert M. Mahony, Gregory R. Mier, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, Counsel for Applicant.
Chris P. Villemarette, Alexandria, J. Minos Simon, Lafayette, Earl F. Sundmaker, III, New Orleans, Archie P. Joseph, Breaux Bridge, Glen Jolivette, Counsel for Respondent.
KIMBALL, Justice.[*]
We granted the writ of defendant, Acceptance Insurance Company (AIC), because it appeared the decision of the court of appeal was in conflict with decisions from other circuits dealing with the exclusion for bodily injuries arising out of the use of a motor vehicle which is commonly found in home-owner's insurance policies. After further review, however, we find we need not address this issue because the motor vehicle exclusion in the policy at issue, when read in conjunction with the definition of the term "motor vehicle," is ambiguous. Therefore, we affirm that portion of the court of appeal's opinion which reverses the trial court's granting of summary judgment in favor of defendant, AIC, only insofar as it pertains to the ambiguity contained in the exclusion and remand this case to the trial court for further proceedings.
Additionally, the court of appeal incorrectly concluded that the son of the insured was not a resident of the insured's dwelling and, thus, the medical payments portion of the insurance policy was applicable. Finding that the insured's son was, in fact, a resident of the insured's dwelling, we reverse the court of appeal's contrary conclusion and reinstate the trial court's granting of summary judgment in favor of AIC on the issue of medical payments coverage.

Facts and Procedural History
Kodi Sonnier, the ten-year-old son of Pauletta Gedward and Ronnie Sonnier, was injured in a four-wheeled, all-terrain vehicle (ATV) accident on Saturday, June 3, 1995. On the date of the accident, Kodi was with his father at his father's house pursuant to a consent judgment which granted joint custody to Gedward and Sonnier and named Gedward as the domiciliary parent.[1] That afternoon Kodi and two of his siblings were inside Sonnier's house watching TV when they heard Glenn Jolivette, Sonnier's adult half-brother, arrive on the ATV. Jolivette had ridden the ATV to Sonnier's house the day before and had given the children rides on it without incident.
The ATV did not belong to either Jolivette or Sonnier, but belonged to their brother, Bobby Sonnier, who was working offshore that weekend. Sometime prior to leaving for work offshore, Bobby Sonnier had taken the ATV to a friend's house to have maintenance work performed on the ATV. Jolivette took the ATV from this friend's house without Bobby Sonnier's permission.
Upon hearing Jolivette's arrival, the children went outside to meet Jolivette. Shortly after his arrival, Jolivette, who lived approximately two to three miles from Sonnier's *1267 house, realized he needed to return home so he could go to church. He asked Sonnier to give him a ride home and said he would leave the ATV at Sonnier's house. He told Sonnier he could ride his children on it and showed Sonnier, who had never driven or ridden on the ATV, how to start it and put it in motion. Sonnier then left the children and Jolivette near the ATV and returned to the house to get his keys. Then, according to Sonnier, the following occurred:
And I was in the house, and I heard the thing in the backyard, you know, going to thethe property that was adjacent to mine. And I could hear it wasit was moving. It was really gearedrevved up. And I looked inout the window, and it was my son, Kodi, on it. And knowing that he did not know how to ride that thing, drive it or handle it and what not, and at the speed that he was going, something was going to happen, and so I ran outside and, by the time that I turned around the house to get to the back, he was off of it. The accident had occurred then.
(Sonnier deposition, p. 51).
When Sonnier reached the scene of the accident, he found Kodi lying on the ground in a fetal position and bleeding from a laceration on his head. Sonnier carried Kodi to a neighbor's house and waited for the ambulance that had been called. Kodi remained in the hospital for several weeks and underwent extensive physical therapy. As a result of the accident, Kodi's left side is weak and he has a large scar on the back of his head.
Gedward filed suit against Sonnier, Sonnier's homeowners' insurer, AIC, Jolivette and Bobby Sonnier. Gedward alleged that Sonnier was "at fault for failing to supervise his minor child, Kodi, while Kodi was on his premises and thus permitting Kodi unrestricted access to the four-wheeled vehicle." She further alleged that AIC was liable in solido with the other defendants by virtue of the terms of the policy of liability insurance it issued to Sonnier which provides coverage for Sonnier's premises. Sonnier filed a cross-claim against AIC, alleging AIC was responsible to him for the cost of his defense and for all damages for which he may be cast.
On April 9, 1997, Ronnie Sonnier filed a motion for summary judgment, asserting that there was no genuine issue of material fact as to AIC's duty to defend and indemnify him against the claims asserted by Gedward and that he was entitled to judgment as a matter of law.
On June 6, 1997, AIC filed a motion for summary judgment, alleging that it was entitled to judgment as a matter of law as certain provisions in Sonnier's policy applied to exclude coverage in the instant case. Specifically, AIC claimed the medical payments provision did not apply because Kodi was a resident of Sonnier's dwelling and, as such, was excluded from coverage. That provision provides:
Coverage FPersonal Medical Payments WE will pay up to OUR Limits of Liability shown on the Declaration Page for the necessary medical expenses incurred or medically determined within one year from the date of an accident causing bodily injury. The accident must occur between the "From" and "To" dates shown on the Declaration Page. Medical expenses means reasonable charges for medical, surgical, X-Ray, dental, ambulance, hospital, professional nursing, recognized religious method of healing, prosthetic devices and funeral services. This coverage does not apply to YOU or a resident of YOUR dwelling other than residence employees.

(Emphasis added.) Additionally, AIC claimed, coverage for bodily injury was excluded when it arose out of the use of a motor vehicle loaned to the insured. That provision provides in pertinent part:
Section II Exclusions
A. Coverage EPersonal Liability and Coverage FMedical Payments to Others
1. Coverage does not apply to bodily injury or property damage:
* * *
e. arising out of the ownership, maintenance, use, loading or unloading of:
(2) a motor vehicle owned or operated by, or rented or loaned to YOU;
*1268 The term "motor vehicle" is further defined in the policy as:
E. "motor vehicle" means:
* * *
3. a motorized golf cart, snowmobile or other motorized land vehicle owned by any insured. It must be designed for recreational use off public roads and off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle;
These provisions, AIC concluded, entitled it to be dismissed from the suit.
Finally, on July 2, 1997, plaintiff filed a motion for summary judgment on the issue of AIC's liability, contending that coverage was provided under Sonnier's policy as Kodi was not a resident of Sonnier's dwelling and that her cause of action arose from Sonnier's failure to properly supervise the child and not from the use of a motor vehicle.
A hearing on these motions for summary judgment was held on July 7, 1997. Subsequent to the hearing, the trial court denied the motions for summary judgment filed by Gedward and Sonnier and granted the motion for summary judgment filed on behalf of AIC, thereby dismissing AIC from the suit. In its oral reasons for judgment, the trial court stated that Kodi was a resident of Sonnier's dwelling on the day of the accident pursuant to the joint custody agreement in effect between the parties. Further, the trial court found that the ATV qualified as a "motor vehicle" under the terms of AIC's policy.
Gedward appealed the granting of summary judgment in favor of AIC, arguing to the third circuit that the exclusions relied upon by the trial court to deny coverage were not applicable. The court of appeal, with one judge dissenting, reversed, finding that the trial court erred in granting AIC's motion for summary judgment because AIC failed to establish the absence of factual support for one or more elements essential to plaintiffs claim against the company. Gedward v. Sonnier, 97-1068 (La.App. 3 Cir. 5/20/98), 713 So.2d 770. The appellate court found Kodi was not a resident of Sonnier's household on the date of the accident because he spent the majority of his time with his mother, kept his clothing and other personal belongings at his mother's house, had his own bedroom at his mother's and not at his father's, and received all his mail at his mother's home. The court of appeal also relied on the fact that Sonnier, Gedward and Kodi agreed that Kodi resided with his mother and that it was never mutually intended by Gedward and Sonnier that Kodi would remain at his father's home for any extended length of time in making its determination that Kodi was not a resident of his father's dwelling. Additionally, the court of appeal reversed the granting of summary judgment in favor of AIC because it found that Sonnier's alleged failure to supervise Kodi arose independently of the use of the vehicle and that the occurrence of Kodi's injuries while using the ATV was merely incidental to Sonnier's alleged breach of the duty to supervise his child. Alternatively, the court found that summary judgment was erroneously granted because the provisions relied upon to deny liability coverage are ambiguous as the policy's definition of "motor vehicle" requires that the vehicle be owned by the insured, while the exclusion excludes coverage for injuries arising out of the use of a motor vehicle "owned or operated by, or rented or loaned to" an insured. Because the language of the two sections resulted in an ambiguity, the court held that it must be interpreted in favor of coverage and, as such, it did not need to reach the issue of whether the vehicle was "loaned" to Sonnier on the date of the accident. For all of the above reasons, the court of appeal concluded that the trial court incorrectly granted AIC's motion for summary judgment because AIC "did not establish that Gedward would be unable to establish an element of [her] claim against it and that it was entitled to judgment as a matter of law." Id. at p. 14, 713 So.2d at 777.
AIC appealed the third circuit's decision to this court. As previously noted, we granted writs to determine whether the court of appeal erred in its analysis of the "arising out of use" provision, but find we need not reach this issue for the reasons that follow. 98-1688 (La.10/9/98), 726 So.2d 13.

*1269 Liability Coverage
Each provision in an insurance policy must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. See La. C.C. art.2050. An insurance contract must be construed as a whole, and one portion cannot be construed separately at the expense of disregarding another. Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). If there exists an ambiguity in a policy, that ambiguity should be construed in favor of the insured and against the insurer. Pareti, 536 So.2d at 420. That is, "[i]f the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied." Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991).
In light of the foregoing principles, we find the motor vehicle exclusion must be interpreted with reference to the definition of "motor vehicle." AIC's policy excludes coverage for bodily injury arising out of the use of a "motor vehicle owned or operated by, or rented or loaned to" the insured. The policy, however, defines "motor vehicle" as a "motorized golf cart, snowmobile or other motorized land vehicle owned by an insured." (Emphasis added.) AIC argues the exclusion enlarges and essentially redefines the term "motor vehicle." Arguably, this is a plausible interpretation of the two provisions. We believe, however, that the insured could have reasonably concluded from reading both the entire definition of "motor vehicle" and the exclusion that the exclusion only applies to recreational vehicles owned by him. This is reasonable in light of the fact that of the four possible categories of "motor vehicles" defined by the policy, ownership is a component only of so-called "motorized land vehicles."[2] That is, it is reasonable to conclude that the other types of motor vehicles defined in the policy, those defined without reference to ownership, are excluded when operated, rented or loaned, but that only recreational vehicles owned by the insured are excluded. As such, two readings of these provisions are possible and reasonable and the exclusion is therefore ambiguous. Because of the existence of the ambiguity, we must interpret the ambiguity in favor of the insured and hold that AIC's policy does not exclude coverage for plaintiff's injuries if Sonnier is found to have been negligent.[3] Therefore, we find the trial court erred in granting AIC's motion for summary judgment.
Because we reverse the trial court's granting of summary judgment in favor of AIC on this ground, we need not address the issue of whether bodily injury at issue arises out of the use of the "motor vehicle." We therefore express no opinion as to the correctness of the court of appeal's holding with regard to this issue. Furthermore, although we have determined that AIC's policy does not exclude coverage for the personal liability of Sonnier in this case, we nevertheless must remand the case to the trial court because *1270 the issue of Sonnier's negligence must still be resolved by trial on the merits.

Medical Payments Coverage
Although we have held that AIC is not entitled to summary judgment on the issue of liability coverage because of the ambiguity present in the exclusion, AIC may still be entitled to a partial summary judgment on the issue of medical payments coverage if Kodi was a resident of Sonnier's dwelling. The appellate court concluded that Kodi was not a resident of Sonnier's dwelling and, therefore, AIC was not entitled to summary judgment on the issue of medical payments coverage. We disagree.
The insurance policy provides that coverage for necessary medical expenses does not apply to the insured or a "resident" of the insured's dwelling. The term "resident" is not defined in the policy and it has been noted, when such is the case, that the term has no absolute or precise meaning. See Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981) (on rehearing). We must, then, endeavor to ascertain the intent of the parties in accordance with the general, ordinary, plain and popular meaning of the term, unless it has acquired a technical meaning. LIGA v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. Whether a person is or is not a resident of a particular place is a question of law and fact and is to be determined from the facts of each particular case. Bond, 407 So.2d at 408. Our jurisprudence recognizes that the concept of residency is different from that of domicile. While a person has only one domicile, he may have several residences. Taylor v. State Farm Mut. Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965).
In Bearden v. Rucker, 437 So.2d 1116 (La. 1983), this court recognized that the resolution to the question of whether a spouse was a "resident of the same household" as the spouse named in the policy was "not solely dependent upon whether the couple is living under the same roof." Rather, the court stated, "the emphasis is upon whether there remains membership in a group rather than an attachment to a building and it is a matter of intention and choice rather than one of location." Id. at 1121. Similarly, in Taylor, 248 La. 246, 178 So.2d 238, the court found that it was not necessary that a son be under his parents' roof at all times to be a resident of their household.
In the instant case, Sonnier and Gedward exercised joint custody of Kodi pursuant to a valid consent judgment. Pursuant to that judgment, Sonnier was free to exercise custodial privileges on alternating weekends, which is exactly what he was doing at the time the accident occurred. Additionally, Sonnier routinely exercised his custodial rights, generally seeing his children every other weekend and longer in the summer, when his job allowed.[4] The judgment of *1271 joint custody, combined with the fact that Sonnier routinely exercised his custodial rights, convinces us that Kodi was in fact a resident of Sonnier's dwelling.[5]
Kodi's relationship with his father was not divested when his parents divorced; he remained a member of his father's family. The consent judgment itself contemplated that Kodi would be a resident of both parents' homes when it stated, "Each parent is responsible for transportation of the children while the children are in residence." (Emphasis added.) Clearly, as evidenced by the consent judgment and the events that actually occurred under that agreement, both Gedward and Sonnier intended that Kodi reside with both of his parents. Kodi's statement, contained in his affidavit, that he considered his residence to be that of his mother, does not mandate the conclusion that he was not a resident of his father's dwelling because Kodi's status is that of an unemancipated minor and, as such, his residency status is tied to that of his parents and because AIC's policy does not resolve the issue of residency by referring to the intent of the person seeking to be called (or excluded as) a resident, as was the case in Carbon v. Allstate Ins. Co., 97-3085 (La.10/20/98), 719 So.2d 437. Finally, we do not find it dispositive of the residency issue that Kodi did not have a bedroom at Sonnier's house, that Kodi transported his clothing and toys between both parents' homes rather than having two complete wardrobes, and that Kodi received his mail either at the homes of his mother or grandmother. These factors have as their focus attachment to a building rather than membership in a group and we therefore reject them.
Because we find that Kodi was a resident of Sonnier's dwelling at the time of the accident, we conclude that the medical payments coverage in AIC's policy does not apply to the instant situation. Therefore, AIC is entitled to a partial summary judgment on the issue of medical payments coverage. The court of appeal's contrary conclusion on this issue is reversed.

Conclusion
The insurance policy at issue contains an ambiguity when the motor vehicle use exclusion for personal liability and medical payments is read in conjunction with the definition of the term "motor vehicle." Therefore, we interpret the policy in favor of coverage and remand the case to the trial court to determine whether the insured is liable for plaintiffs injuries. The court of appeal's decision regarding this issue is affirmed. Finally, as previously discussed, we find Kodi was a resident of Sonnier's dwelling at the time of the accident and, as such, coverage for medical payments under AIC's policy is excluded. The court of appeal's holding on this issue is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
*1272 AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
LEMMON, J., dissents in part and concurs in part and assigns reasons.
KNOLL, J., dissents in part and concurs in part with reasons.
JOHNSON, J., dissents in part and concurs in part.
LEMMON, J., Dissenting in Part and Concurring in Part.
While I agree that an exclusion in an insurance policy must be construed against the insurer when the language is susceptible of two reasonable interpretations, I disagree that there are two reasonable interpretations of the language of the exclusion at issue in this case.
This homeowner's policy excludes liability coverage of an insured for "bodily injury ... arising out of the ... use ... of ... a motor vehicle owned or operated by, or rented or loaned to YOU...." The term "motor vehicle," as generally used "[t]hroughout the policy" is defined (as applicable to the facts of this case) as a "motorized land vehicle owned by any insured."
If the policy had only excluded bodily injury arising out of the use of a motor vehicle, with no further modifying language, then the exclusion clearly would not apply, because the motorized land vehicle in this case does not fall within the general policy definition. However, the exclusion did not use the unmodified term "motor vehicle," which would be governed by the policy definition. Rather, the exclusion expressly modifies the general policy definition to exclude coverage not only of a motor vehicle owned by the insured (the policy definition of a motor vehicle), but also of a motor vehicle operated by the insured, a motor vehicle rented to the insured, or a motor vehicle loaned to the insured.[1]
I find nothing in the Insurance Code or in the other statutes that prohibits an insurer from providing an exclusion that modifies the definition of a motor vehicle in a policy,[2] as long as the modifying language is clear and explicit. Perhaps this insurer could have been more explicit by using the term "motor vehicle" four times in the exclusion, as I did in the discussion in the preceding paragraph, rather than once. However, in my view, this exclusion clearly and properly modified the general policy definition of motor vehicle, applicable for purposes of the exclusion only. Since it is not reasonable to apply the general policy definition to the modified definition in the exclusion, there is no ambiguity.
I concur in the majority opinion on the issue of medical payments coverage.
KNOLL, Justice, concurring in part and dissenting in part.
I concur in part. Kodi is clearly a resident of his father's dwelling. I concur specially to note that in determining whether a child is the resident of an unmarried spouse, the intention of the parties and the facts and circumstances of the case will be paramount to the discretion we afford trial courts. Generally, a child should be found a legal resident of his parents' households by virtue of a joint custody decree. However, where a parent has not exercised the right of visitation under the joint custody decree, the child may be found not to be a resident of that parent's household. See Carbon v. Allstate Ins. Co., 97-3085 (La.10/20/98), 719 So.2d 437, 443 (Knoll, J., dissenting).
I cannot agree, however, with the majority's conclusion that the exclusion, when read with the definition of "motor vehicle," is ambiguous. The homeowner's policy defines the term "motor vehicle" as "a motorized golf cart, snowmobile or other motorized land vehicle owned by any insured." However, the policy excludes coverage to bodily injury "arising out of the ... use ... of ... a motor vehicle owned or operated by, or rented or *1273 loaned to YOU." Under the clear and explicit terms of the contract, the exclusion modifies the general definition of "motor vehicle," expanding its applicability to the exclusion clause, and excludes coverage for injury caused by the use of a motor vehicle "owned or operated by, or rented or loaned to YOU." Under Louisiana jurisprudence, the insurer and insured may agree to limit liability and to impose and enforce reasonable conditions upon their policy obligations, absent a conflict with statutory provisions or public policy. See Ducote v. Koch Pipeline Co., 98-0942 (La. 1/20/99), 730 So.2d 432. The ambiguity in the policy is created only when the majority interprets the policy in a strained manner under the guise of contractual interpretation to enlarge its provisions beyond what was reasonably contemplated by its unambiguous terms. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97), 691 So.2d 665. Only with a perversion of the words is an ambiguity created where none exists. Indeed, the majority's strained reading of the homeowner's policy creates the absurd results that coverage is excluded for bodily injury from motor vehicles owned by the insured, but that the policy provides coverage for bodily injury from motor vehicles "operated by, or rented or loaned to" the insured. This interpretation of the provision violates LA.CIV.CODE art.2049 by rendering the clause meaningless because a homeowner cannot loan himself an owned vehicle. Accordingly, I respectfully dissent from that portion of the opinion.
NOTES
[*] VICTORY, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Specifically, the consent judgment in effect at the time provided that Kodi would remain with Gedward, as the domiciliary parent, except that Sonnier would have the right to have Kodi and his siblings "in his possession" on the first and third weekends of each month from Friday at approximately 6:00 p.m. until Sunday at approximately 4:00 p.m. Additionally, Sonnier had the right to have the children "in his possession" for two weeks during the summer months of June, July or August and alternating holidays.
[2] In a section entitled "DEFINITIONS," the policy provides the following introductory language:

Throughout this policy, "YOU" and "YOUR" mean "named insured" shown in the Declarations and the spouse if a resident of the same household. "WE," "US" and "OUR" mean the Company providing this insurance. In addition, certain words and phrases are defined as follows:
(Emphasis added.) The entire definition provided in the policy for the term "motor vehicle" reads:
E. "motor vehicle" means:
1. a motorized land vehicle designed for travel on public roads and subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;
2. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp home or utility trailer not being towed by or carried on a vehicle included in E.1. is not a motor vehicle;
3. a motorized golf cart, snowmobile or other motorized land vehicle owned by any insured. It must be designed for recreational use off public roads and off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; or
4. any vehicle while being towed by or carried on a vehicle included in E.1., E.2. or E.3
(Emphasis added.)
[3] Having resolved the issue of whether the ATV was a "motor vehicle" under the terms of the policy in this manner, we, like the appellate court, need not address in this appeal the issue of whether the ATV was "loaned" to Sonnier.
[4] In his deposition, Sonnier testified as follows:

Q: After the consent judgment was entered into, the judgment that allowed your kids that allowed you visitation rights for your kids
A: Uh-huh (yes).
Q: describe the frequency in which you saw your kids during that period.
A: Every other weekend. I think it was, at the time FridaysI want to say 6:00 on Fridays and bring them back at 4:00 on Sundays.
Q: And this is every other weekend after the consent judgment was rendered?
A: Yeah. Yeah.
* * *
Q: Okay, so during the time period between the consent judgment and the June 3rd accident 
A: Uh-huh (yes).
Q: you were allowed two weeks during the summer to see your children?
A: Yes. I knowthey were never with me for two weeks. The simple reason is thatI think it had a lot to do with vacation schedule in the summertime, and I could only, you know, get a week off.... But definitely a week off in the summertime.
* * *
Q: The longest period of time that you kept them during the summer was a week?
A: I think so, yeah. Yeah, I think so.
Rec. vol. 1, p. 187, 189.
Similarly, in her deposition testimony on examination by AIC's attorney, Gedward testified as follows:
Q: You said earlier that Ronnie [Sonnier] would take the kids every other weekend before the change? [referring to a modification of the consent judgment subsequent to the accident at issue]
A: Correct.
Q: And they would stay there for the weekend?
A: That's correct.
Rec. vol. 2, p. 286.
Plaintiff was later examined by Sonnier's attorney and testified:
Q: ... On the visitation of Kodi with Ronnie every other weekend, were there any weeks since the divorce where Kodi might have missed coming over to Ronnie's?
A: Yes. Weekends, yes.
* * *
Q: Do you know about how many?
A: Oh, in a year's time, at least six or seven on the average.
Rec. vol. 2, p. 340. We believe the above testimony establishes that it is fair to say Sonnier "generally" or "usually" exercised his custodial privileges on alternating weekends.
[5] We note that this is not a case where the parent having joint custody rarely, if ever, exercised his custodial privileges. We are not, therefore, holding a matter of law that all minor dependent children of divorced parents subject to joint custody are necessarily residents of both parents' households. We reiterate our admonition against such a holding recently articulated in Carbon v. Allstate Ins. Co., 97-3085 (La.10/20/98), 719 So.2d 437 ("It does not violate public policy for an insurance company to hinge its coverage of relatives of the uninsured on the facts of their physical presence in the insured's house and their intent to continue to live there instead of on the determination of their residence as written in a custody judgment. This is especially true in the case, as here, of a custody judgment giving substantial visitation rights to one parent which were not fully effectuated. To hold otherwise would require us to find that it is the public policy of this state that all unmarried dependent children of the insured subject to a custody agreement or judgment be covered under an insurance policy as insureds regardless of whether they, in fact, have ever had any physical presence in the insured's home.").
[1] I perceive no underwriting reason for interpreting the exclusion, as the majority does, to provide coverage for injury arising out of the use of a motorized land vehicle operated by or rented or loaned to an insured, but to exclude coverage when the insured owns the vehicle.
[2] The general policy definition of the term "motor vehicle" obviously was intended to apply only when the term was not expressly defined differently in a specific provision in the policy.