# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2020

No. 19-30656

Lyle W. Cayce
Clerk

DALE A. KENNETT,

Plaintiff - Appellant

v.

USAA GENERAL INDEMNITY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-14765

Before JONES, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Dale Kennett sued USAA General Indemnity Company ("USAA"), claiming that it wrongfully denied him coverage for the loss of his property, located at 705 Virginia Avenue in Bogalusa, Louisiana ("the house"), in a fire. The district court held a three-day jury trial, and seven jurors returned a unanimous verdict in favor of USAA. The jury found that the damage was not covered by Kennett's USAA policy because the house was not his "residence

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30656

premises" at the time of the fire. Kennett now appeals the district court's denial of his renewed motion for judgment as a matter of law and his alternative motion for a new trial. Because the jury could reasonably have found that Kennett did not reside at the house when the fire occurred, we AFFIRM.

I

On March 28, 2016, the house was damaged by fire that both parties agree was the result of arson. Kennett had a USAA homeowner's insurance policy that was in effect. Relevantly, the policy provides $590,000 in "Dwelling Protection" for "[t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling." The policy defines "residence premises" as:

> 1. The one family dwelling, other structures, and grounds; or
>
> 2. That part of any other building;
>
> Where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also means a two, family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

The declarations list "DALE KENNETT 705 VIRGINIA AVE BOGALUSA, WASHINGTON, LA 70427-3344" as the "Named Insured and Residence Premises."

Additionally, the policy provides for total loss dwelling coverage "[i]n the event that your dwelling is completely destroyed by Fire or Windstorm to the extent that it has lost its identity and specific character as a building." The policy does not provide coverage "for damage consisting of or caused directly or indirectly by," *inter alia*, "vandalism and malicious mischief . . . and any ensuing loss caused by any intentional and wrongful act committed in the

course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss."

Kennett sought payment under this policy, and USAA rejected his claim. As a result, Kennett brought suit. He claimed that USAA denied his claim wrongfully and in bad faith and that the damage to his house constituted a total loss. In defense, USAA asserted that the house was not Kennett's "residence premises" at the time of the fire, the house had been vacant for at least 180 consecutive days prior to the fire, and Kennett intentionally caused or conspired to cause the fire. The district court held a jury trial on February 4–6, 2019.

At the close of evidence, Kennett moved for judgment as a matter of law on three issues: (1) the house was his "residence premises" at the time of the fire, (2) the house had not been vacant for at least 180 consecutive days prior to the fire, and (3) he did not intentionally cause or conspire to cause the fire. The district court denied the motions, and the jury returned a verdict in favor of USAA. Because the jury found that the house was not Kennett's "residence premises" at the time of the fire, it did not reach the other issues in the case.

Kennett renewed his motion for judgment as a matter of law and alternatively moved for a new trial. The district court denied both motions. Relevantly, the district court found that (1) Kennett failed to preserve any argument that the insurance policy was ambiguous in its use of the term "residence premises," (2) there was sufficient evidence to support the jury's finding that the house was not Kennett's "residence premises" at the time of the fire, (3) the verdict was not against the great weight of the evidence, and (4) it was not necessary to reach Kennett's claims regarding the 180-day vacancy and the cause of the fire. Kennett filed a timely notice of appeal.

No. 19-30656

## II

We review the denial of Kennett's Rule 50(b) motion for judgment as a matter of law *de novo*, "but our standard of review with respect to a jury verdict is especially deferential." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 652–53 (5th Cir. 2019) (citation omitted). A party is entitled to judgment as a matter of law if no reasonable jury would have had a legally sufficient evidentiary basis to reach a different outcome. *Id.* at 653. In evaluating the evidence, "[w]e credit the nonmoving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Janvey v. Romero*, 817 F.3d 184, 187 (5th Cir. 2016) (quoting *Carroll v. Ellington*, 800 F.3d 154, 168 (5th Cir. 2015)).

The district court may grant a Rule 59 motion for a new trial for a number of reasons, including that the verdict is against the weight of the evidence. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985). We review the district court's decision only for an abuse of discretion. *Apache Deepwater, L.L.C.*, 930 F.3d at 653. Here too, we view the evidence in the light most favorable to the jury verdict. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (internal quotation marks and citation omitted).

## III

First, we address Kennett's arguments that no reasonable jury could have found that the house was not his "residence premises" at the time of the fire. Because we disagree, we need not address Kennett's additional arguments regarding the 180-day vacancy and the cause of the fire.

At trial, Kennett testified that before he was incarcerated in October of 2015, he was staying in Gulfport, Mississippi with someone named Jake Casey. Kennett admitted that during his earlier deposition, he testified that he "moved in" with Casey in August of 2015, seven months before the fire. Kennett

4

also testified that he helped Casey pay cable, electricity, and food bills. Kennett further testified that he was incarcerated from October 13, 2015 through February 23, 2016. Kennett testified that after he was released from custody, he stayed at the house "when [he] needed to go back and forth to do [his] work." Kennett testified that there was no water service at the house when he was released from custody, and he also admitted that at his earlier deposition, he testified that water service was never turned back on prior to the fire. Finally, Kennett admitted that at his earlier deposition, he testified that there was "no set date" for him to return to the house.

Kennett owned a number of other properties near the house. At trial, one of Kennett's lessees and his property manager, Albert Jones, also testified. He said that he was "one hundred percent certain" that no one lived at the house between the time he began renting property from Kennett around September 2015 and the time of the fire. Finally, Christian Mulkey, USAA's fire-origin-and-cause expert, testified that he did not believe anyone had been living at the house prior to the fire because the contents of the premises showed no signs of residency. On the left side of the house, Mulkey observed stored contents and construction materials. On the right side of the house, he discovered that the only furnished bedroom contained the remains of an empty chest of drawers and an empty dresser. Viewing this evidence in the light most favorable to the verdict, it was reasonable for the jury to find that Kennett was not residing at the house at the time of the fire, and consequentially, that the house was not Kennett's "residence premises."

Kennett makes two arguments to the contrary. First, Kennett argues that because the house was listed as the "residence premises" on the declarations page of the insurance policy, the jury was compelled to find that it was Kennett's "residence premises," regardless of whether he was actually residing there at the time of the fire. At best, he argues, the policy is ambiguous

and should be interpreted to effect rather than deny coverage. Kennett's interpretation appears to conflict with the plain language of the policy, which defines "residence premises" as "where you reside *and* which is shown as the 'residence premises' in the Declarations" (emphasis added). Moreover, Kennett's briefing does not address the district court's finding that he failed to adequately raise this argument when he made his initial motion for judgment as a matter of law. Review of that decision is therefore waived. *See, e.g.*, *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008); *Patterson v. Mobil Oil Co.*, 335 F.3d 476, 483 n.5 (5th Cir. 2003).

Next, Kennett argues that the jury was compelled to find that he was residing at the house at the time of the fire, because, under Louisiana law, residency "is a matter of intention and choice rather than one of location." For this proposition, Kennett cites two Louisiana Supreme Court decisions—*Gedward v. Sonnier*, 728 So. 2d 1265 (La. 1999), and *Bearden v. Rucker*, 437 So. 2d 1116 (La. 1983). In both opinions, the court interpreted the term "residency" in an insurance contract, and it stressed the importance of "intention and choice" over "location." *Gedward*, 728 So. 2d at 1270 (finding that a child who primarily resided with his mother was a "resident" of his father's home); *Bearden*, 437 So. 2d at 1121 ("[T]he question of whether a spouse is a 'resident of the same household' as the spouse named in the policy . . . is not solely dependent upon whether the couple is living under the same roof."). The court in *Gedward* also stressed that "[w]hether a person is or is not a resident of a particular place is a question of law and fact and is to be determined from the facts of each particular case." 728 So. 2d at 1270.

We considered the meaning of "reside" under Louisiana law in *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800 (5th Cir. 2009). There, the insured's newly purchased house in New Orleans, Louisiana was damaged during Hurricane Katrina while the insured was in the process of conducting extensive

renovations. *Korbel*, 308 F. App'x at 801. The insurance policy at issue covered additional living expenses if a loss made the "part of the 'residence premises' where you reside not fit to live in." *Id.* at 805. Using language similar to that of the policy at issue here, the policy defined "residence premises" as:

> a. The one family dwelling, other structures, and grounds; or
>
> b. That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.

*Id.*

We noted that, under Louisiana law, "[w]ords in an insurance contract are to be construed using their plain, ordinary and generally prevailing meaning." *Id.* (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). The generally prevailing meaning of "reside," according to the 1989 Oxford English Dictionary, was "to dwell permanently or for a considerable time, to have one's settled or usual abode, to live, *in* or *at* a particular place." *Id.* Applying that definition to the facts of the case, we upheld the district court's grant of summary judgment for the insurer, finding that "there is no question that [the insured] did not reside at the house." *Id.* at 806. "[A]lthough [the insured] spent a great deal of time working on the house and intended it to be his residence in the future," he did not yet reside there because he only sometimes slept at the house, two-thirds of the house was gutted such that it lacked a finished kitchen and bathroom and received electricity via a temporary pole, there was only a minimal amount of furniture at the house, and he did not engage in leisure activities at the house. *Id.* at 805.

Based in part on that decision, the district court in this case instructed the jury:

> The words of a contract must be given the meaning which they generally have in everyday use. If a word is a term of art or has a technical meaning within the context of the contract, you should

7

> give it that special meaning. If a word may have several meanings, you should interpret it as having the meaning which is most in line with the object or objective of the contract.

The district court then provided the jury with the definition of "residence premises" that appears in the contract and informed the jury that "[a]s generally understood, the word reside means to dwell permanently or for a considerable time, to have one's settled or usual home in or at a particular place." Kennett "takes no issue" with these instructions.

Based on these instructions and the facts discussed above, it was reasonable for the jury to conclude that the house was not Kennett's "residence," and therefore "residence premises," at the time of the fire. The district court did not prevent the jury from considering Kennett's intentions with regards to living at the house, and Kennett does not argue that the jury should have been instructed to prioritize such intent. As the finder of fact, the jury was free to discredit Kennett's testimony about his intention to have the house remain his primary residence at all times. Contrary evidence—including the lack of running water at the house, Jones's testimony that no one was living at the house, and Mulkey's testimony that the remains of the house showed no signs of residency—was presented from which the jury was also free to conclude, and apparently did conclude, that Kennett was not residing at the house at the time of the fire. Because there was a reasonable evidentiary basis for the jury's verdict, the district court did not err in denying Kennett's renewed motion for judgment as a matter of law. The district court also did not abuse its discretion by failing to order a new trial. Therefore, we AFFIRM, and we need not reach Kennett's additional arguments regarding the 180-day vacancy and the cause of the fire.

No. 19-30656

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.