STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CA 1297


MARKEETA TENNIE

VERSUS

FARM BUREAU PROPERTY INSURANCE COMPANY D/B/A
LOUISIANA FARM BUREAU INSURANCE COMPANY
AND KRISTOPHER CARTER


Judgment Rendered: ___JUN 0 4 2021___


Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C662689, Section 24


Honorable Wilson E. Fields, Judge Presiding

*************

| | |
|---|---|
| Christopher Jude Roy, Jr.<br>Alexandria, LA | Counsel for Plaintiff/Appellant,<br>Markeeta Tennie |
| Stacey Allen Moak<br>Breann Crane<br>Baton Rouge, LA | Counsel for Defendant/Appellee,<br>Farm Bureau Property Insurance<br>Company D/B/A Louisiana Farm Bureau<br>Mutual Insurance Company |
| Robert H. Savant<br>Baton Rouge, LA | Counsel for Defendant/Appellee,<br>Kristopher Carter |

*************

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

This matter is before us on appeal by plaintiff, Markeeta Tennie, from a judgment of the trial court granting defendant Louisiana Farm Bureau Mutual Insurance Company's (Farm Bureau) motion for summary judgment and dismissing her claims against Farm Bureau. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 29, 2016, Kristopher Carter picked up his four-year-old son, Marcel Tennie, from daycare at the request of Marcel's mother, Markeeta Tennie.[1] While some of the facts regarding the events that occurred thereafter and throughout the course of the evening are in dispute, it is undisputed that at some point in the night, Marcel suffered from a medical emergency while in the care of Mr. Carter, which resulted in his death. Marcel's cause of death was classified as a homicide due to complications of multiple blunt force trauma.[2]

On October 23, 2017, Ms. Tennie filed suit against Louisiana Farm Bureau Mutual Insurance Company[3] and Mr. Carter, alleging that the defendants were liable to her for the wrongful death of her son, Marcel, because Mr. Carter engaged in "horseplay" with Marcel, which caused injuries that ultimately led to his death when Mr. Carter failed to timely seek medical treatment for Marcel. As to Farm Bureau specifically, the petition alleged that Mr. Carter lived at his parents' home,

---

[1] Ms. Tennie and Mr. Carter were never married, and they did not have a formal custody arrangement in place.

[2] Ms. Tennie points out in her brief to this court that, in his deposition testimony, Mr. Carter disputed that any "horseplay" or playfighting occurred on the night the child died and he refused to plead guilty to negligent homicide, instead pleading *nolo contendere* to the criminal charge against him. Pretermitting whether his plea would be relevant to the issue of whether summary judgment was properly granted herein, we note that no evidence of Mr. Carter's *nolo contendere* plea to negligent homicide was submitted in evidence herein. Although his deposition was taken at the Caldwell Detention Center, the excerpts attached in support of and in opposition to the motion do not reference his plea. As such, we have not considered this plea in our *de novo* review herein.

[3] Ms. Tennie initially named "Farm Bureau Property Insurance Company d/b/a Louisiana Farm Bureau Insurance Company" as defendant in this matter. However, Ms. Tennie filed a "First Supplemental and Amending Petition" substituting "Louisiana Farm Bureau Mutual Insurance Company" as the named defendant.

2

which was insured under a policy of liability insurance through Farm Bureau, and that the policy extended liability coverage to Mr. Carter, as a relative living in the household with the permission of his parents. Farm Bureau answered and denied liability, asserting, *inter alia*, that the policy contained two exclusions, namely, one which excludes coverage due to "intentional acts or directions by... any insured," and another, which excludes coverage for bodily injury to any insured and defines "insured" as the named insured and any residents of the household who are also relatives of the named insured.

On September 13, 2018, Ms. Tennie filed a supplemental and amending petition, averring that after she allowed Mr. Carter to keep Marcel for the night, Marcel "became ill for some reason, where he vomited, had diarrhea, became lethargic and had a general sickness," which Mr. Carter did not report to Ms. Tennie. She further alleged that despite Marcel's "serious medical problem," Mr. Carter did not bring Marcel to get medical treatment or call her, and that his failure to act and get medical treatment caused Marcel's death or the loss of a significant chance of Marcel's survival. Farm Bureau filed a general denial to this petition and, after discovery, filed a motion for summary judgment.[4]

In its motion for summary judgment, Farm Bureau contended that "there is no genuine issue of material fact that the Farm Bureau homeowner's policy...at issue in this matter does not provide coverage for this incident and/or the fault of Kristopher Carter who caused [Marcel's death]." Farm Bureau asserted that two policy exclusions apply to this matter: Section II(1)(a), which excludes coverage for bodily injury resulting from the expected or unexpected results of any intentional acts by any insured ("the intentional acts exclusion"), and Section

---

[4] Ms. Tennie also filed a motion for summary judgment, which the trial court heard on the same day it heard Farm Bureau's motion. When the trial court rendered judgment granting Farm Bureau's motion for summary judgment, it also rendered judgment denying Ms. Tennie's motion for summary judgment. Ms. Tennie did not appeal or seek review of the denial of her motion for summary judgment.

3

II(2)(f), which excludes coverage for bodily injury to any insured, including resident relatives of the household ("the resident relative exclusion").

Ms. Tennie opposed the motion, contending that Farm Bureau could not "unequivocally" prove that the two policy exclusions applied to the instant matter. Ms. Tennie asserted that the evidence presented shows that disputed facts remain as to whether Mr. Carter intentionally made contact with Marcel, causing his injuries. According to Ms. Tennie, Mr. Carter's negligence in failing to seek medical care, and not an intentional act, led to Marcel's death. As to the resident relative exclusion, Ms. Tennie contended that because Marcel was only an "occasional visitor" at the residence, the resident relative exclusion did not apply.

Mr. Carter also filed an opposition to the motion, contending that his testimony that he did not touch Marcel was sufficient to preclude summary judgment as his testimony creates "an undeniable genuine issue of material fact" as to whether he intentionally made contact with Marcel. He also contended that because Ms. Tennie exercised "complete control" over Marcel, she and Marcel did not live at his parent's residence.

After a hearing on the motion on July 13, 2020, the trial court granted Farm Bureau's motion for summary judgment and dismissed all of Ms. Tennie's claims against Farm Bureau, with prejudice, on July 20, 2020.

Ms. Tennie now appeals, contending that the trial court erred in granting Farm Bureau's motion for summary judgment. Specifically, she contends the evidence shows a "disputed issue of material fact" regarding:

(1) Whether Mr. Carter voluntarily made contact with Marcel and caused his injuries;

(2) Whether Mr. Carter had a duty to seek medical treatment for Marcel, and whether he breached that duty; and

4

(3) Whether Marcel was a relative of the household, such that the "resident relative" exclusion of the Farm Bureau policy applied.

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Northshore Regional Medical Center, Inc., 2014-0628, (La. App. 1st Cir. 1/26/15), 170 So. 3d 173, 176.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So. 2d 764, 765 *(per curiam)*; Penn v. CarePoint Partners of Louisiana, L.L.C., 2014-1621 (La. App. 1st Cir. 7/30/15), 181 So. 3d 26, 30. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. Hines, 876 So. 2d at 765-66. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Collins v. Franciscan Missionaries of Our Lady Health Sys., Inc., 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So. 3d 191, 195, writ denied, 2020-00480 (La. 6/22/20), 297 So. 3d 773. Simply put, a "material" fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding

5

a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Collins, 297 So. 3d at 773.

The burden of proof rests with the mover. LSA-C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). In deciding a summary judgment motion, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. Savannah v. Smithy's Supply/Big 4 Trucking, 2018-1033 (La. App. 1st Cir. 5/31/19), 280 So. 3d 615, 619, writ denied, 2019-01286 (La. 10/21/19), 280 So. 3d 1168.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Janney v. Pearce, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So. 3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So. 3d 1078. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194.

The interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment.

6

An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Womack v. Mar Jay Productions, L.L.C., 2019-0712 (La. App. 1st Cir. 2/21/20), 298 So. 3d 745, 750, writ denied, 2020-00424 (La. 6/12/20), 307 So. 3d 1032. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Prejean v. McMillan, 2018-0919 (La. App. 1st Cir. 2/28/19), 274 So. 3d 575, 578. The judiciary's role in interpreting insurance contracts is to determine the common intent of the parties to the contract. Edwards v. Daugherty, 2003-2103 (La. 10/1/04), 883 So. 2d 932, 940.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. Miller v. Superior Shipyard and Fabrication, Inc., 2001-2683 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 203. However, an insurer has the burden of proving that a loss falls within a policy exclusion. Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Womack, 298 So. 3d at 750.

As a general rule, when the term "relative" is used in insurance contracts, it is intended to include persons related by both marriage and blood. Cadwallader v. Allstate Ins. Co., 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580-81, citing Zeringue

7

v. Zeringue, 94-1411 (La. App. 1st Cir. 4/7/95), 654 So. 2d 721, 722, writ denied, 95-1660 (La. 10/6/95), 661 So. 2d 471. However, if a term such as "resident" is not defined in the policy, then the term has no absolute or precise meaning. Gedward v. Soniner, 98-1688 (La. 3/2/99), 728 So. 2d 1265, 1270. Whether or not a person is a resident of a particular place is a question of law and fact and is to be determined from all of the facts of each particular case. However, our jurisprudence recognizes that the concept of "residency" is different from that of domicile. While a person has only one domicile, he may have several residences. Gedward, 728 So. 2d at 1270; Parkview Baptist Church and School v. White, 2006-2411 (La. App. 1st Cir. 9/19/07), 971 So. 2d 1078, 1079.

In determining whether a person is a resident of a particular household with respect to insurance coverage, the emphasis is upon whether there remains membership in a group or a relationship with a person, rather than an attachment to a building; the issue is a matter of intention and choice, not one of location. Gedward, 728 So. 2d at 1270; Bearden v. Rucker, 437 So. 2d 1116, 1121 (La. 1983).

In the instant matter, the exclusions to the homeowner's policy upon which Farm Bureau relies state, in pertinent part:

**SECTION II—EXCLUSIONS**

* * *

**1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:**

> a. resulting from intentional acts or directions by you or any **insured**. The expected or unexpected results of these acts or directions are not covered.

* * *

**2. Coverage E – Personal Liability does not apply to:**

* * *

8

> f. Bodily injury to you or any insured within the meaning of
> **DEFINITIONS** 5.a or 5.b.

Under definition 5.a, an insured means "you and residents of your household who are... your relatives." The policy does not define the term "resident."

Citing these provisions, Farm Bureau argues that under the undisputed facts, these exclusions warranted summary judgment in its favor as a matter of law. In support of its motion for summary judgment, Farm Bureau offered: excerpts from the depositions of Mr. Carter, Johnte Payne, Ms. Tennie, Sargent Belford Johnson, Jimmie Smith, MD, Jeffery Gruner, MD, FACS, Melissa Hayes, and Terrill Hayes; Marcel's certified medical records from Ochsner Medical Center; the coroner's report; the Farm Bureau homeowner's policy issued to Terrill and Melissa Hayes; a petition for protection from abuse filed by Ms. Tennie against Mr. Carter; and Ms. Tennie's original petition for damages.

In opposition to the motion, Ms. Tennie offered: excerpts from her deposition, as well as the depositions of Mr. and Mrs. Hayes, Mr. Carter, and Dr. Smith; one page of Marcel's uncertified medical records from Ochsner Medical Center; Marcel's death certificate; and the Farm Bureau homeowner's policy issued to Mr. and Mrs. Hayes.[5] Mr. Carter also filed an opposition to Farm Bureau's motion. In support of his opposition to the motion for summary

---

[5] Ms. Tennie also offered a letter sent from defense counsel to plaintiff's counsel. Relying on LSA-C.C.P. art. 966(A)(4), Farm Bureau objected to the admissibility of this letter as impermissible evidence on summary judgment. Under Article 966(A)(4), only pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions may be filed in support of or in opposition to the motion. Accordingly, we have not considered this exhibit in conducting our *de novo* review herein.

Additionally, we note that only certified medical records are permissible evidence under Article 966(A)(4); however, Farm Bureau did not object to the admissibility of the uncertified medical records filed in opposition to the motion. Under Article 966(D)(2), the court "shall consider any documents to which no objection was made." Thus, we will consider this exhibit in conducting our review.

judgment, Mr. Carter filed excerpts from his deposition, as well as the depositions of Mr. Payne, Te'Myron Variste, and Ms. Tennie.[6]

## Resident Relative Exclusion
## (Assignment of Error No. 3)

Ms. Tennie contends that summary judgment was improper because various disputed issues of fact remain herein as to whether the exclusions apply. On appeal, (and in the proceedings below), the parties' briefs and arguments focus extensively on the "intentional act" exclusion, and whether Mr. Carter's actions were shown to be intentional and, therefore, excluded from coverage under the policy, or whether the child's injuries and death resulted from negligence in his manner of "making contact" with the child or from his negligence in failing to timely seek medical treatment for the child. However, because we find our resolution of Ms. Tennie's third assignment of error renders her remaining assignments of error moot, we will first address her third assignment of error. In this assignment of error, Ms. Tennie contends that the trial court erred in granting summary judgment where material issues of fact remain as to whether Marcel was a resident of the household, such that the policy provision excluding coverage for claims by resident relatives of the household applies to him.

In support of its motion for summary judgment under the resident relative exclusion, Farm Bureau relies on the deposition testimony of Mr. and Mrs. Hayes, Mr. Carter, and Ms. Tennie establishing that Marcel was a resident relative of the household and, therefore, was excluded from coverage. Farm Bureau contends

---

[6] We note that in Mr. Carter's opposition to the motion, he contended the motion should be denied because Farm Bureau's policy was not proper summary judgment evidence "as it is not in the category of documents that may be filed *in support of* a motion for summary judgment and is not authenticated by an affidavit." (Emphasis added.) Unless properly authenticated by an affidavit or deposition to which they are attached, contracts generally are not proper summary judgment evidence. See LSA-C.C.P. art. 966, cmt. (c) (2015). Pretermitting whether the policy could be considered when filed in support of the motion for summary judgment, and without authentication by affidavit or deposition, we note that Ms. Tennie also attached the policy to her **opposition** to the motion. Article 966(D)(2) provides that the court "*shall* consider any documents to which no objection is made." (Emphasis added.) Because no objection was made to the documents offered by Ms. Tennie in opposition to the motion for summary judgment, we have also considered the policy as it was attached to Ms. Tennie's opposition.

10

that the evidence establishes that Marcel was a relative of Mr. and Mrs. Hayes, who "frequently stayed with Mr. Carter" and resided at their home, warranting judgment in its favor as a matter of law under the resident relative policy exclusion. We agree.

Mr. Carter testified that until the August 2016 flood, he lived at his parents' house on Wales Street, which was insured by the Farm Bureau policy at issue in this matter. Thereafter, he briefly moved in with his brother, until approximately a week before Marcel's death on November 30, 2016, when he moved back into the house on Wales Street with his mother's knowledge. He further testified that before the flood, "[j]ust like normal relationships, [Marcel and Ms. Tennie would spend the night at the house] one time, or it would be different periods of time." Mr. Carter stated he would pick Marcel up from daycare when Ms. Tennie was working and would bring Marcel to the Wales Street house, where he and Marcel would usually stay overnight unless he and Ms. Tennie weren't "on good terms."

Ms. Tennie's testimony reflects that although she and Mr. Carter never formally shared a home together, such that there was no common address where both of them would receive their mail and did not have the same address on their driver's licenses, after the flood, she and Marcel would follow "more or less the same routine that [they] followed before the flood," where they would stay with Mr. Carter "one or two times a week maybe every two or three months whenever we were getting along."[7]

Melissa Hayes, Mr. Carter's mother, also lived at the Wales Street residence and likewise testified that when things were "smooth" between Ms. Tennie and Mr. Carter, Marcel would stay with Mr. Carter on weekends and may have stayed at the residence as much as "two or three times a month." She noted that Marcel

---

[7]Ms. Tennie testified that before the flood, they would stay at the Wales Street residence and after the flood, they would stay at Mr. Carter's brother's apartment.

11

had "[e]verything he needed" at the house. Terrill Hayes, Mr. Carter's stepfather, also lived at the residence and similarly stated that Marcel would stay at the house along with Ms. Tennie if she came over on the weekends and would come "one or two times out of the month" before the flood if Ms. Tennie and Mr. Carter were communicating. Mr. and Mrs. Hayes both testified that Ms. Tennie also would sometimes bring Marcel to stay at their house when she had to work, although without an overnight stay on those particular occasions.

Ms. Tennie contends that the facts remain in dispute as to Marcel's residence. Relying on excerpts from her deposition, as well as the depositions of Mr. and Mrs. Hayes, she argues that under these facts, the exclusion from coverage for relatives residing in the house does not apply where Marcel was not a "resident" of the household. She argues that because she and Mr. Carter were never married, had never cohabitated before Marcel's death, and had no formal custody arrangement in place, Marcel was not a legal resident of the Wales Street house, but rather was an occasional visitor, and, therefore, does not fall within the exclusion. She testified that while Marcel "had a few articles of clothing" at the Wales Street house and that they would stay at the house if Mr. Carter asked them to do so, she did not share a home with Mr. Carter. She contends that the testimony of Mrs. Hayes that Marcel didn't stay a "good bit" as well as her own testimony, creates a disputed issue of fact as to whether the child resided at their home and supports her claim that he was not a resident of the household.

Based on our *de novo* review of the record, we find that Farm Bureau met its initial burden of proving that the resident relative policy exclusion is applicable to this matter. The parties do not dispute that Marcel was the grandchild of the insured. Accordingly, because the term "relative" used in insurance contracts includes persons related by blood, Marcel is a relative of the household under the policy. See Cadwallader, 848 So. 2d at 580-81.

12

Moreover, considering all of the evidence before us, including the parties' own statements, we find that no genuine issues of fact remain as to whether Marcel was a "relative resident" of the policyholders' household. As noted above, when determining whether a person is a resident of a household, "the emphasis is upon whether there remains membership in a group[,] rather than an attachment to a building." Gedward, 728 So. 2d at 1270, citing Bearden, 437 So. 2d at 1121. We further note that the Louisiana Supreme Court has specifically rejected factors such as not having a bedroom at a house, having to transport clothing between two houses, and only receiving mail at one of the residences as precluding a finding of resident status because those factors "have as their focus attachment to a building rather than membership in a group." Gedward, 728 So. 2d at 1271 (unemancipated minor's testimony that his residence was with his mother does not mandate the conclusion that he was not a resident of his father's dwelling, because "his residency status is tied to that of his parents" and the policy language at issue did not rely on an intent to reside at a certain place); cf. Smith v. Rocks, 42,021 (La. App. 2nd Cir. 5/16/07), 957 So. 2d 886 (teenage daughter of the insured was a resident of her father's home, where the mother had sole custody, there was no set visitation schedule, she did not have a bedroom or clothes at the house, and she would try to visit him once or twice a month, but several weeks could go by before she even saw her father).

In the instant case, the parties all stated that Mr. Carter would sometimes pick Marcel up from daycare and Marcel usually would stay overnight at the house approximately one to three times a month, even though longer periods of time would sometimes pass before he would see Marcel if he and Ms. Tennie were not

on "good terms."[8] Moreover, as stated by Ms. Tennie, they would stay at the house when Mr. Carter asked them to do so. Because an unemancipated minor's residency is "tied to that of his parents" and the emphasis is upon whether there is membership in a group, and not an attachment to a building, we find that under the evidence presented, no genuine issue of material fact remains as to whether Farm Bureau established that the child meets the definition of a "resident relative" of the Wales Street house, within the meaning of the policy. As such, Farm Bureau met its burden of proving that the exclusion applied herein and that summary judgment in its favor was warranted as a matter of law. See Gedward, 728 So. 2d at 1271.

Accordingly, we reject the arguments in Ms. Tennie's third assignment of error as meritless, affirm the summary judgment in favor of Farm Bureau, and pretermit discussion of Ms. Tennie's first and second assignments of error regarding the intentional act exclusion.

## CONCLUSION

For the above reasons, we affirm the trial court's July 20, 2020 judgment, granting Farm Bureau's motion for summary judgment and dismissing Markeeta Tennie's claims against Farm Bureau, with prejudice. Costs of this appeal are assessed to the plaintiff, Markeeta Tennie.

**AFFIRMED.**

---

[8]To the extent that Ms. Tennie suggests that some of her deposition testimony could be viewed as contradicting other testimony and allegations made by her, we note that this court has held that subsequent testimony, while usually presented in the form of a subsequent affidavit, in contradiction to prior testimony is not sufficient to create an issue of fact where none exists without some explanation or support for the contrary statements. See Plant Performance Services, LLC v. Harrison, 2017-1286 (La. App. 1st Cir. 4/6/18), 249 So. 3d 1, 8–9.

14